UNITED STATES of America,
Plaintiff-Appellee,

v.

ONE 1977 MERCEDES BENZ, 450 SEL,
VIN 11603302064538, its Tools and
Appurtenances, Defendant,

Aimee Brenda Webb, Claimant-Appellant.

No. 82–5291.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1982.

Decided June 13, 1983.

Eric Nobles, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Burton Marks, Los Angeles, Cal., for claimant-appellant.

Before WRIGHT, KENNEDY and BOO-CHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

This is a forfeiture action brought by the federal government pursuant to 21 U.S.C. § 881 (1976 & Supp. V 1981) against a 1977 Mercedes Benz automobile allegedly used to transport narcotics. Claimant Aimee Webb, owner of the automobile, argues that forfeiture is improper because the evidence showing probable cause to forfeit the automobile should have been suppressed as illegally seized. She also questions the lawfulness of the state and federal seizures of the automobile itself. Webb filed a third-party claim against various law enforcement personnel and organizations alleging violations of her constitutional rights in connection with the seizures of the automobile. This claim was dismissed because it was not within the scope of Fed.R.Civ.P. 14. Summary judgment was later granted to the government on its forfeiture claim. Webb appeals the dismissal of the third-party claim and the grant of summary judgment. We affirm because the seizure of the disputed evidence did not violate Webb's rights under the fourth amendment. Further, Ninth Circuit caselaw indicates that the automobile may be forfeited despite unlawful seizure. And finally the third-party complaint was properly dismissed because it was outside the scope of rule 14.

*Facts*

On the evening of April 2, 1980, two Los Angeles police officers patrolling in a marked police car saw the subject vehicle being driven on public streets without license plates. The officers stopped the vehicle to investigate a potential violation of the California vehicle code. The driver of the Mercedes, Thomas Reese, at the request of the officers, produced his driver's license but did not have the vehicle registration. Reese got out of the Mercedes and offered to get the vehicle registration. After Reese left the car, Officer Pesanti discovered a package in the automobile which was later determined to contain cocaine. Officer Pesanti stated that the package was in plain sight. There was a dispute as to whether white powder could be seen through the cover of the package. The officers believed, based on training and experience, that the package contained a narcotic substance. The contents of the package were tested and found to be cocaine.

Claimant Aimee Brenda Webb, the registered owner of the Mercedes, arrived at the arrest scene and told the officers that she owned the automobile, that Reese had permission to use it, but that she had no knowledge that narcotics were in the car. The police officers released the car to Webb after verifying ownership. The next day, members of the Los Angeles Police Department obtained a warrant authorizing seizure of the Mercedes. The application for the warrant was supported, in part, by two presentencing reports prepared by United States Probation Officers in prior federal prosecutions of Reese in 1973 and 1976. Webb alleges that these reports were improperly obtained by Special Agent William Taylor of the Drug Enforcement Administration from the office of the United States Attorney for the Central District of California, in violation of rule 32(c)(3) of the Federal Rules of Criminal Procedure.[1] She fur-

---

1. Rule 32(c)(3) provides for limited disclosure of presentence reports to the defendant and to the attorney for the Government in active cases. The breadth of the precautions provid-

ther alleges that Special Agent Taylor delivered the reports to members of the Los Angeles Police Department, and to the office of the District Attorney for the County of Los Angeles where the reports were attached to, and incorporated by reference in, the affidavit in support of the warrant to seize the defendant vehicle. The Mercedes was seized pursuant to the warrant that same day at the home of Webb.

On April 10, 1980 Special Agent Taylor contacted the Los Angeles Police Department and demanded release of the Mercedes to the DEA pursuant to the forfeiture provisions of 21 U.S.C. § 881 (1976 & Supp. V 1981) and 21 C.F.R. § 1316.72 (1982). The next day, the Los Angeles Police Department and the District Attorney for Los Angeles County obtained an ex parte order from the Municipal Court of the County of Los Angeles releasing the vehicle to Special Agent Taylor of the DEA. The federal "seizure" of the automobile was warrantless. The trial court granted summary judgment to the government on December 18, 1981.[2]

*Standard of Review*

In reviewing a grant of summary judgment, the appellate court's task is identical to that of the trial court. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 n. 1 (9th Cir.1980). Viewing the evidence in the light most favorable to the party against whom summary judgment is granted, the appellate court must determine whether there was a genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. *Heiniger v. City of Phoenix,* 625 F.2d 842, 843 (9th Cir.1980).

**DISCUSSION**

**I.**

*The Grant of Summary Judgment*

■ The Government establishes a prima facie case for forfeiture by probable cause. Probable cause for forfeiture of a vehicle exists if there is evidence sufficient to warrant a reasonable belief that the vehicle has been used to transport contraband. *United States v. One 56-Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983); *United States v. One 1967 Buick Riviera,* 439 F.2d 92 (9th Cir.1971). Once probable cause is established, the burden of proof shifts to the claimant to establish that the vehicle is not subject to forfeiture. 19 U.S.C. § 1615 (1976 & Supp. V 1981) (made applicable by 21 U.S.C. § 881(d) (Supp. V 1981)); *Tahuna,* 702 F.2d at 1281; *United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1107 (9th Cir.1976) (per curiam).

Webb bases her defense to the forfeiture action solely on a challenge to the existence of probable cause. The Government rests its showing of probable cause on the cocaine seized from Webb's automobile. The motion for summary judgment is supported by affidavits of the two officers who arrested Reese and an affidavit of a laboratory technician accompanied by a lab report showing that the package seized did contain cocaine. Webb argues that the cocaine was illegally seized thus tainting and making inadmissible the cocaine and the Government's documentary evidence. She does not challenge the sufficiency of that evidence if admissible. Webb also argues that the state and federal seizures of the Mercedes were illegal and that either of these illegal actions is ground for dismissal of the forfeiture action.

---

ed by this rule to shield the reports may imply blanket confidentiality, but nothing in the rule explicitly indicates that the action of the federal agent in the present case was illegal or misconduct. Because of our holding in this case, however, we need not address whether the confidentiality mandated by rule 32(c)(3) is as broad as Webb argues. Nor do we address whether Webb has standing to invoke the precautions of this rule.

**2.** In the state prosecution of Reese, the Los Angeles Superior Court ordered the suppression of the cocaine and dismissed the case. Webb contends that on February 17, 1981, the court ordered the Mercedes returned to claimant, but stayed that order pending the appeal of the dismissal. However, claimant's citations to the record reveal no such order, and a search of the record discloses none.

*A. Admissibility of the Cocaine*

 Because forfeiture proceedings are quasi-criminal in character and meant to penalize the commission of an offense against the law, the exclusionary rule applies to such proceedings, barring evidence obtained in violation of the fourth amendment. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). The Court has made clear, however, that suppression of the product of a fourth amendment violation may be urged only by one whose rights were violated by the search, not by one who is aggrieved by the introduction of damaging evidence gathered as a consequence of the violation of the rights of another. *Alderman v. United States,* 394 U.S. 165, 171–75, 89 S.Ct. 961, 965–967, 22 L.Ed.2d 176 (1969). Because we find that Webb's rights were not violated by the seizure of the cocaine, we hold that Webb may not assert any illegality in the search of the automobile as a basis for suppressing the cocaine in this action.[3]

 The proper test to be applied in determining whether Webb's rights were violated by the search of the automobile and the seizure of the cocaine is whether, by that act, Webb suffered an invasion of a legitimate expectation of privacy. *Rakas v. Illinois,* 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978); *United States v. Portillo,* 633 F.2d 1313, 1316 (9th Cir.1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981). That determination is made on the basis of federal law, despite the part played by state officers in the seizure of the cocaine. *Portillo,* 633 F.2d at 1317. Further, the burden rests on Webb, as proponent of the motion to suppress, to establish that her fourth amendment rights were violated by the seizure of the cocaine. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas,* 439 U.S. at 130–31 n. 1, 99 S.Ct. at 424 n. 1.

Whether the owner may protest a search of a vehicle under the circumstances of this case is a matter of first impression in the Ninth Circuit. The Supreme Court, however, has enunciated several general principles which aid in resolution of this issue.

 Automobiles have traditionally been treated differently from residence in the law governing search and seizure. *See Rakas,* 439 U.S. at 148, 99 S.Ct. at 433. The Court has commented many times on the fact that automobiles by their very nature are surrounded by a diminished expectation of privacy.

> One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325 (1974) (plurality opinion) (citation omitted); *see also United States v. Chadwick,* 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484–2485, 53 L.Ed.2d 538 (1977). Further, as a result of the extensive regulation of motor vehicles, drivers and traffic, automobiles frequently come into contact with police officers in both criminal and non-criminal contexts. These factors result in an expansion of the intrusions police officers may justifiably make without invading individual privacy with regard to automobiles. *See South Dakota v. Opperman,* 428 U.S. 364, 368–71, 96 S.Ct. 3092, 3096–3098, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 440–41, 93 S.Ct. 2523, 2527–2528, 37 L.Ed.2d 706 (1973). *But see Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660

---

**3.** The inquiry regarding whether a party may assert a fourth amendment violation has in the past been addressed under the rubric of "standing". Under *Rakas v. Illinois,* 439 U.S. 128, 138–40, 99 S.Ct. 421, 427–429, 58 L.Ed.2d 387 (1978), however, the question of standing is subsumed within the substantive fourth amendment claim. Thus, the question is not whether Webb has standing to assert the alleged illegal search of her automobile, but rather, whether the alleged illegal search violated any right guaranteed to Webb by the fourth amendment.

(1979); *United States v. Munoz,* 701 F.2d 1293 (9th Cir.1983).

 In the present case, Webb may assert only ownership as a basis for a legitimate expectation of privacy in the automobile. Although "property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated," *United States v. Salvucci,* 448 U.S. 83, 91, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *United States v. Perez,* 689 F.2d 1336, 1338 (9th Cir.1982) (per curiam), the Supreme Court has made clearer still that ownership alone is not determinative. *See Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968); *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). The Court in *Rakas* recognized that expectations of privacy may be legitimized "by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society", each having varying strength depending upon the circumstances of each case. *Rakas,* 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430–431 n. 12. For example, the right to exclude others may give rise to a legitimate expectation of privacy and may or may not stem from property interests. *See id.; Perez,* 689 F.2d at 1338. Clearly, any precautions taken to exclude others or otherwise maintain a privacy interest will heighten the legitimate expectation of privacy in the protected area. *See Rawlings,* 448 U.S. at 105, 100 S.Ct. at 2561; *Chadwick,* 433 U.S. at 11, 97 S.Ct. at 2483; *Perez,* 689 F.2d at 1338.

Based on these principles, two circuits have held that the owner of a vehicle could not protest the search of the vehicle conducted while it was lent to a third party. In *United States v. Dall,* 608 F.2d 910 (1st Cir.1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980), the court held ownership alone insufficient to establish an expectation of privacy. The owner of a pickup truck had lent the truck to some friends. A locked camper on the truck bed contained stolen property that was seized in a warrantless search. The owner could not challenge the search when he disclaimed any knowledge of the contents and did not allege that he locked the camper. The court held that when the owner gave possession to another for the other's uses to the temporary exclusion of the owner, he extinguished the already diminished expectation of privacy attached to automobiles. 608 F.2d at 915. In this case we need not go as far as *Dall* since no locked portions of the vehicle are involved.

Similarly, in *United States v. Dyar,* 574 F.2d 1385 (5th Cir.), *cert. denied,* 439 U.S. 982, 99 S.Ct. 570, 58 L.Ed.2d 653 (1978), the Fifth Circuit held that defendants who asserted a leasehold interest in an airplane sufficient to create a traditional property right abandoned any expectation of privacy when they gave possession of the plane to a pilot. 574 F.2d at 1390; *see also United States v. Nunn,* 525 F.2d 958 (5th Cir.1976); *United States v. McConnell,* 500 F.2d 347 (5th Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1327, 43 L.Ed.2d 424 (1975).

In the present case, Webb voluntarily turned her automobile over to Reese for his exclusive use. She took no precautions to safeguard any privacy interest she may have had in the automobile. Further, for the purpose of seizing a package arguably in plain view, the officer intruded only into the open passenger area of the automobile, an area where Reese could have invited any stranger. Under these circumstances, we hold that Webb relinquished her expectation of privacy when she lent her automobile to Reese.[4] She may not now contest

---

4. *United States v. Mulligan,* 488 F.2d 732 (9th Cir.1973), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974) differs from our case on this point. In *Mulligan,* we held that the owner of an automobile, registered to a fictitious name at a nonexistent address, could challenge the warrantless search of his automobile despite the fact that the automobile had been parked in another's driveway for two months. Unlike the present case, the defendant in *Mulligan* had not authorized that other person to use the automobile; there was no relinquishment of possessory interest or expectation of privacy.

the legality of the seizure of the cocaine from the open passenger area of her automobile while it was in Reese's possession.

## B. Seizure of the Automobile

Webb asserts that forfeiture of the automobile is improper because it was not properly seized by either the state or the federal authorities. Webb alleges that the state warrant pursuant to which the Los Angeles Police Department officers seized her automobile was illegally obtained because it was supported by two federal presentence reports of Mr. Reese from prior drug offenses improperly provided to the local officers. She argues that the federal seizure was improper because it was done without a warrant and without due process. Finally, she asserts that the proper remedy for the illegal seizure is dismissal of the forfeiture action.

■ We need not decide whether Webb's contentions concerning the validity of the seizures of the automobile have merit because the "mere fact of the illegal seizure, standing alone, does not immunize the goods from forfeiture". *United States v. One 1971 Harley-Davidson Motorcycle,* 508 F.2d 351, 351 (9 Cir.1974) (per curiam) (quoting *John Bacall Imports, Ltd. v. United States,* 412 F.2d 586, 588 (9th Cir.1969)). In *One Harley-Davidson,* the Government had seized a motorcycle for forfeiture without a warrant under circumstances that were admittedly illegal. The court found that any evidence which is the product of an illegal search or seizure must be excluded at trial, but that forfeiture may proceed if the Government can satisfy the requirements for forfeiture with untainted evidence. This position was recently reaffirmed in *United States v. An Article of Drug,* 661 F.2d 742, 745 (9th Cir.1981) (per curiam).

■ In the present case, because the cocaine was not seized in violation of Webb's fourth amendment rights, there is sufficient untainted evidence to establish probable cause for forfeiture of the automobile. Any improper conduct in seizing the automobile is thus irrelevant to the power of the Government to subject Webb's automobile to forfeiture.

■ Webb also raises a jurisdictional issue.[5] She argues that because forfeiture is *in rem,* the district court's jurisdiction rests on seizure of the *res.* She reasons that if the *res,* the automobile, was improperly before the court, then the court had no jurisdiction to order the automobile forfeited. *One Harley-Davidson* also disposes of this argument. The court in that case clearly rejected an argument that "an object illegally seized cannot in any way be used ... as the basis for *in rem* jurisdiction." 508 F.2d at 351 (emphasis in original). This holding is supported by *Dodge v. United States,* 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392 (1926). In *Dodge,* the Supreme Court held that, despite an improper seizure, "[t]he jurisdiction of the Court was secured by the fact that the *res* was in the possession of the [party authorized to seize] when the libel was filed." 272 U.S. at 532, 47 S.Ct. at 192 (citation omitted). We hold, therefore, that the jurisdiction of the trial court was proper despite

---

5. Webb argues that seizure of the Mercedes by federal officers infringed on the sovereignty of the State of California. She argues that the California courts were in legal custody of the Mercedes and that such custody precludes federal custody of the automobile. However, Webb ignores the fact that legal custody of the California courts was dissolved by an order of a California court. Further, the Mercedes was seized by the state officers as evidence in the state court criminal prosecution of Reese. When that action was dismissed, the California courts had no further practical reason for retaining jurisdiction over the Mercedes. Any federal seizure, therefore, does not impose upon any legal or practical interest the courts of the State of California could have in Webb's automobile.

Webb also asserts that she should have had notice of the release of the Mercedes to the federal officers and an opportunity to protest. However, due process does not require that pre-seizure notice or opportunity to be heard be given the owner of a vehicle subject to forfeiture. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 94 S.Ct. 2080, 2089–2090, 40 L.Ed.2d 452 (1974); *United States v. One 1971 BMW 4-Door Sedan,* 652 F.2d 817, 821 (9th Cir.1981).

any irregularities in the seizure of the automobile.[6]

## II.

### The Third-Party Complaint

#### A. Amendment of the Notice of Appeal

Webb's original notice of appeal failed to specify that she was appealing not only the grant of summary judgment on the forfeiture claim but also the dismissal of her third-party complaint. The third-party defendants moved for dismissal of the appeal for failure to comply with Fed.R.App.P. 3(c) requiring specific designation of "the judgment, order or part thereof appealed from". Webb moves for leave to amend her notice of appeal to include appeal of the dismissal of her third-party claim. That motion was referred to us by the motions panel.

We have held that a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake. *See Munoz v. Small Business Administration,* 644 F.2d 1361, 1364 (9th Cir.1981); *United States v. Walker,* 601 F.2d 1051, 1057–58 (9th Cir. 1979); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* § 203.18, at 3–77 (2d ed. 1983). In the present case, Webb's

intent to appeal the dismissal of the third-party complaint may be fairly inferred. It is true that Webb did not name the third-party defendants in her notice of appeal; nor is there any evidence that she served that notice on any of the third-party defendants. Such matters, however, are not jurisdictional. Fed.R.App.P. 3(a). Webb did address the dismissal of the third-party action in her opening brief, however, and served that brief on all third-party defendants. Further, Webb had justification in believing that she had properly filed an appeal of that dismissal. "An appeal from the final judgment draws in question all prior non-final orders and all rulings which produced the judgment." 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* § 203.18, at 3–80 (2d ed. 1983) (footnote omitted); *Munoz,* 644 F.2d at 1364.

The third-party defendants can show no prejudice from allowing appeal of the dismissal. The federal third-party defendants fully briefed the issue. The Los Angeles City and County third-party defendants received Webb's brief, had notice of the appeal and were granted an extension of time in which to file responsive briefs on appeal (of which they have not taken advantage). We grant Webb's motion to amend her notice of appeal to include dismissal of the third-party complaint.

---

**6.** The result we reach in the present case may seem unduly harsh as applied to an innocent owner who lends property to another, unaware that it will be used in the violation of federal law. As we have seen, that owner may be unable to protest either the unlawful seizure of the property or the evidence necessary to make a case of forfeiture. The innocent owner, however, is not without protection. The Supreme Court has suggested in dicta that

it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property.

*Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974) (citations and footnote omitted).

In addition, forfeitures like the present one, pursued under 21 U.S.C. § 881(a) (1976 & Supp. V 1981), are subject to the procedures for remission and mitigation contained in 19 U.S.C. § 1618 (1976). *See* 21 U.S.C. § 881(d) (Supp. V 1981). Under this provision, forfeiture may be remitted or mitigated if the owner acted without wilful negligence or without an intention to violate the law. The regulations promulgated to implement § 1618 state that, if the property subject to forfeiture was in the possession of another who was responsible for the violation of law bringing about the forfeiture, the owner must produce evidence explaining how the property came in the possession of the other party, and showing that, prior to parting with the property, the owner did not know or have reasonable cause to believe that the property would be used in violation of law or that the violator had a criminal record or a general reputation for commercial crime. 19 C.F.R. § 171.13(a) (1982).

B. *Dismissal of the Third-Party Complaint*

 The district court dismissed the third-party complaint because it was not transactionally related to the forfeiture action and thus not permissible under Fed.R. Civ.P. 14.[7] The decision to allow a third-party defendant to be impleaded under rule 14 is entrusted to the sound discretion of the trial court. *See Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 477 (D.C.Cir. 1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *United States v. Pioneer Lumber Treating Co.,* 496 F.Supp. 199, 203 (E.D.Wash.1980); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1443, at 208 (1971) and cases cited therein. Thus, we review the trial court's action for an abuse of that discretion.

Fed.R.Civ.P. 14(a) provides for service of a third-party complaint "upon a person not a party to the action who is or may be liable to [the original defendant] for all or part of the plaintiff's claim". Thus, a third-party claim may be asserted only when the third party's liability is in some way dependant on the outcome of the main claim and the third party's liability is secondary or derivative. *See Baker v. Limber,* 647 F.2d 912, 914–15 n. 2 (9th Cir.1981) (alternative holding); *House v. Mine Safety Appliances Co.,* 573 F.2d 609, 622 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978); *United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749, 751 (5th Cir.1967); *United States v. Hutchins,* 47 F.R.D. 340, 341 (D.Or.1969); 6 C. Wright & A. Miller, *supra* § 1446, at 246. It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.

In the present case, Webb asserts claims against a federal agent and various entities associated with the City and County of Los Angeles for violation of her constitutional rights in connection with the transfer of custody of her automobile from the city to the federal authorities. These claims are related to but not derivative of the original forfeiture claim. Further, the natures of the two claims are entirely different and independent. Although there may be some economy in trying these claims together, we cannot say that the trial court abused its discretion in dismissing the third-party complaint.

### CONCLUSION

We affirm the award of summary judgment to the Government and the dismissal of the third-party claims.

AFFIRMED.

---

**7.** Both parties argued the propriety of the dismissal of the third-party complaint with reference to Fed.R.Civ.P. 14(c). Subsection (c) governs third-party practice in admiralty and maritime actions. Although the present action is *in rem,* an action most often found in admiralty, this case is not an admiralty case. The third-party complaint should have been analyzed under Rule 14(a). The trial court also relied in its order dismissing the third-party complaint on Rule 14(c). If dismissal was appropriate under 14(a), however, this court may affirm despite the error in the lower court order. *See United States v. Aranson,* 696 F.2d 654, 658 (9th Cir. 1983).