**UNITED STATES of America,
Petitioner,**

v.

**ONE 1984 CHEVROLET CORVETTE,
VIN # 1G1AY0782E5124671,
Respondent.**

No. 89–1128–C.

United States District Court,
D. Kansas.

Sept. 6, 1991.

Michael G. Christensen, Asst. U.S. Atty., Wichita, Kan., for petitioner.

Daniel E. Monnat, Monnat & Spurrier, Wichita, Kan., for respondent.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several motions. The claimant, Lee Ray Harper, moves to suppress all physical evidence obtained and all observations made as a result of the search of the respondent vehicle on July 27, 1988. (Dk. 13). Petitioner moves to strike the claimant's affidavit. (Dk. 25). Petitioner also moves for summary judgment against the respondent vehicle. (Dk. 16). The court will address the motions *seriatim*.

Claimant filed his three-page motion to suppress on June 21, 1990. Even though the claimant's motion to suppress was not accompanied by a brief or memorandum as required by D.Kan. Rule 206(a), the petitioner filed its timely response on July 11, 1990. (Dk. 15). The petitioner's only argument in response was that the claimant had not met his burden of showing a privacy expectation in the respondent vehicle. By minute order filed July 20, 1990, (Dk. 18), the court directed the claimant to submit his evidence showing that he had a legitimate expectation of privacy in the respondent vehicle.

More than a week after the petitioner filed its response and almost a month after he filed his three-page motion, the claimant filed a ninety-three page brief in support of his motion to suppress.[1] (Dk. 19). On August 2, 1990, the claimant responded to the court's minute order with his affidavit. (Dk. 24). Petitioner then moved to strike this affidavit.

On July 25, 1990, the parties filed a stipulation that the claimant's motion to suppress was submitted to the court on certain evidence including the transcripts from the state court proceedings, any testimony on standing, and the pleadings and briefs. On February 28, 1991, the parties submitted their exhibits pursuant to the stipulation for the court's resolution of the claimant's motion to suppress and the issue of standing. From those exhibits, the court has determined the following facts should govern its decision upon the motion to suppress.

Detective Robert T. Benton worked for the Sedgwick County Sheriff's Department and was assigned to the Drug Enforcement Administration's Task Force. While working undercover, Benton had purchased cocaine from Jayanna Schaker on several occasions prior to the event in question. Benton asked Schaker to set up the purchase of two ounces of cocaine. On July 26, 1988, Schaker called Benton and said her source was available and a purchase of the two ounces sometime the next day would be arranged. Benton met Schaker the next

---

**1.** The claimant's brief appears to be a modified copy of a memorandum filed in the related state court proceedings either at the trial or appellate level or both. In fact, at page 172 of the transcript on the motion to suppress in *State v. Knapp,* No. 88–CR–1467, the state's attorney refers to the defendant's ninety-six page brief. This brief is also replete with citations to Kansas Supreme Court decisions on federal constitutional issues that have been addressed with more frequency by the federal circuit courts, in particular, the Tenth Circuit, the source of binding precedent for this federal district court. The court does not see the cause or reason for claimant's delay in filing his brief in support of the motion.

day behind a bar and followed her to an apartment building at 241 South Kansas in Wichita.

Benton and Schaker went into apartment number four where Benton was introduced to an individual he later learned was William Knapp. The three of them went into Knapp's back bedroom and discussed the deal. Knapp asked for the $2900 from Benton, "so he [Knapp] could just walk around the corner, purchase the two ounces of cocaine." (Transcript of Motion to Suppress at p. 16). Benton refused to give Knapp the money without having the cocaine first. Knapp told Benton the deal would not take place then, and Knapp asked Benton and Schaker to leave.

Within seconds after they left, Benton saw Knapp also walk out of the apartment building. The surveillance team observed Knapp walk about two blocks and talk to two white females in a parked black Corvette for approximately a minute. After this brief conversation, Knapp left and the women in the black Corvette drove away. The surveillance team followed the black Corvette to the parking lot in the back of DR's club which is little more than a mile from where the black Corvette had been parked when Knapp talked to its occupants. The two females went into the club. Around this time, Benton radioed the surveillance team that the purchase did not occur, that Knapp had apparently contacted his supplier who was driving the black Corvette, and that the cocaine would be in the car.

Around fifteen minutes later, the two females began to leave the club's parking lot in the black Corvette when officers maneuvered their cars to block its exit. One police car pulled in front of the black Corvette and two others stopped behind it. Four officers got out of the cars with their guns drawn and asked the two women to exit the black Corvette. Once the women cleared the car and the officers could see their hands, the weapons were put away. The officers next requested identification. The officers retrieved the women's purses from the car so that the women could provide identification. At the same time, the agent in charge, Otto Privette, told the woman driving the black Corvette, later identified as Mary Friesen, that he had information she was transporting drugs in the car. Friesen denied this. Privette asked her if agents could search the car, and she replied "sure, go ahead."

When the black Corvette was searched, officers found two baggies of cocaine rolled up in a dish towel laying in a laundry basket stored behind the two front seats. Officers also found a .380 caliber Beretta semi-automatic handgun under the passenger seat.

## A. Motion to Strike

■ Petitioner moves to strike claimant's affidavit filed in response to the court's minute order. Petitioner argues this sanction is appropriate as claimant had refused to answer petitioner's discovery requests by invoking his privilege against self-incrimination. At least two of petitioner's requests for admission and one interrogatory addressed the substance of what Harper later averred. Nonetheless, the court believes this case does not present circumstances to warrant striking the claimant's affidavit.

As evidenced by correspondence, counsel for both sides agreed that claimant's motion to suppress should be decided before any relief based upon claimant's failure to answer discovery requests would be sought. Petitioner's counsel must have realized this agreement meant that claimant could avoid answering those discovery requests relating to any suppression issues and still present evidence in support of his motion to suppress. It is not consistent for petitioner to now complain of what should have been fully anticipated. Moreover, by allowing claimant to avoid answering the unrelated discovery requests at this juncture does not constitute "a positive invitation to mutilate the truth." *Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). Petitioner's motion to strike is denied.

**B. Standing**

The Fourth Amendment right against unreasonable searches is personal and may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Consequently, a search may not be challenged unless the challenger demonstrates that his own constitutional rights were violated. *U.S. v. Rubio–Rivera*, 917 F.2d 1271, 1274 (10th Cir.1990). Standing is assessed upon two factors: whether the individual has displayed a subjective expectation of privacy and whether that subjective expectation is one that society is ready to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). Though neither of them is determinative of standing, ownership or lawful possession is often a dispositive factor. *U.S. v. Arango*, 912 F.2d 441, 445 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991). "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude [others]." *Rakas*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430–31 n. 21.

Citing the case of *United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir.1983), *cert. denied*, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984), the petitioner contends the claimant must show that he did not relinquish his expectation of privacy in the black Corvette by lending it to Mary Friesen. The Ninth Circuit in that case found the owner had no privacy interest in his car as it had been voluntarily turned over to the exclusive possession of another to drive without taking any measures to safeguard his privacy interest such as restricting its use while on loan. 708 F.2d at 449. See *U.S. v. One 1986 Mercedes Benz*, 846 F.2d 2, 4 (2nd Cir.1988) (Owner lacked a privacy interest in car because it had been borrowed on previous occasions by the same individual without restrictions on where or with whom he could go). Recently, the Ninth Circuit distinguished its earlier decision finding the owner retained an expectation of privacy in his car even though he had parked it at another person's home, covered it, and gave him the keys. *United States v. $277,000.00 U.S. Currency*, 941 F.2d 898 (9th Cir.1991). The distinguishing fact was that the owner did not give the other person permission to open or drive the car. *Id.*

In his affidavit, claimant Harper avers he owns the respondent vehicle and that Mary Friesen did not have permission to operate it on July 27, 1988. Harper states he left town on July 23, 1988, after parking the Corvette in the garage and giving his daughter the keys to it. Harper denies giving Friesen or anyone else authority or permission to drive the Corvette while he was out of town. By this affidavit, Harper has demonstrated that he did not relinquish his expectation of privacy in the Corvette while he was out of town. Exclusive possession of it was not voluntarily lent to anyone on that date. Consistent with his ownership interest, Harper took measures to safeguard his right to exclude others from it. Harper has standing to bring his motion to suppress.

Before tackling the legal issues raised in claimant's motion to suppress, the court will give the petitioner the opportunity to address those issues. This allowance for additional briefing is justified not only by the above preliminary rulings but by the claimant's piecemeal submission of its motion to suppress. The petitioner will have twenty days from the date of this order to file its response. Any reply brief will be due five days after service of petitioner's brief on claimant.

IT IS THEREFORE ORDERED that the petitioner's motion to strike (Dk. 25) the claimant's affidavit is denied;

IT IS FURTHER ORDERED that the claimant's motion to suppress (Dk. 13) remains pending, and petitioner will have twenty days from the date of this order to file its response to the legal issues in claimant's brief (Dk. 19);

IT IS FURTHER ORDERED that the petitioner's motion for summary judgment (Dk. 16) will remain pending until the court has determined the issues raised in petitioner's motion to suppress.