USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1709

 BARRY LEHMAN,
 Plaintiff, Appellee,

 v.

 REVOLUTION PORTFOLIO LLC,
 Defendant, Third-Party Plaintiff,
 Appellee,

 v.

 STUART A. ROFFMAN,
 Third-Party Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Mark L. Wolf, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Campbell, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 

 David Berman, with whom Franklin H. Levy, Gina Dines Holness,
and Abrams, Roberts, Klickstein & Levy were on brief, for
appellant.
 Paul M. McDermott, with whom Jonathan W. Fitch, Suzanne Q.
Feldman and Sally & Fitch were on brief, for appellee.

January 27, 1999

 SELYA, Circuit Judge. This appeal grows out of a
triangular 1987 financial transaction that involved the Farm Street
Trust (the Trust), its beneficiaries (Barry Lehman and Stuart A.
Roffman), and First Mutual Bank for Savings (the Bank). In the
ensuing eleven years, the transaction imploded, litigation
commenced, the Bank and Lehman became insolvent, parties came and
went, and the case was closed and partially reopened. In the end,
only a third-party complaint proved ripe for adjudication. Even
then, the district court dismissed two of its three counts, but
entered summary judgment on the remaining count. The third-party
defendant, Roffman, now appeals. After sorting through the muddled
record and the case's serpentine procedural history, we affirm. 
I. BACKGROUND
 The historical facts are not seriously disputed. On or
about October 19, 1987, the Trust, acting through its trustee,
executed a promissory note for $2,800,000 in favor of the Bank in
order to fund the purchase of property in Dover, Massachusetts. 
Lehman and Roffman, each of whom enjoyed a 50% beneficial interest
in the Trust, personally guaranteed the note, and Lehman proffered
two parcels of real estate as additional collateral. In short
order, the Trust defaulted on the loan and the Bank foreclosed on
Lehman's properties. Lehman responded by suing the Bank in a
Massachusetts state court seeking restraint or rescission of the
imminent sale of his real estate. The gravamen of his suit was a
claim that Roffman had fraudulently introduced a sham investor to
the Bank in order to gull it into making the loan, and that the
Bank, in swallowing this spurious bait hook, line, and sinker, had
failed to exercise due diligence.
 Roughly one year after answering the complaint, the Bank
failed. The Bank was a federally-insured financial institution. 
Consequently, the Federal Deposit Insurance Corporation (FDIC),
acting as receiver under 12 U.S.C. 1821(c)(3)(A), removed the
action to the federal district court and successfully asked to be
substituted as defendant. Six months later, it moved for leave to
amend its answer to include a counterclaim against Lehman, quaguarantor, for the outstanding loan balance. At the same time, it
moved for leave to serve a third-party complaint against Roffman. 
A magistrate judge granted the motion to amend on July 14, 1992,
and granted the impleader motion on January 21, 1993.
 The FDIC's third-party complaint contained three counts. 
The first two sought indemnification and contribution,
respectively, in regard to the claims advanced by Lehman. The
third sought judgment against Roffman, qua guarantor, for the
outstanding loan balance.
 After Roffman answered the third-party complaint, the
FDIC moved for summary judgment. Roffman not only objected, but
also moved to strike the third-party complaint in its entirety. 
The FDIC opposed that motion. Meanwhile, Lehman entered bankruptcy
and requested a stay of proceedings in the civil suit.
 On September 30, 1994, the district court, presumably
acting in response to Lehman's stay request, issued a so-called
"procedural order of dismissal" that stated:
 In order to avoid the necessity for the
 counsel to appear at periodic status
 conferences, it is hereby ORDERED that the
 above-entitled action be and hereby is
 dismissed without prejudice to either party
 moving to restore it to the docket if any
 further action is required upon completion and
 termination of all bankruptcy or arbitration
 proceedings.

Upon receipt of this order, the clerk of court closed the file, but
did not enter a final judgment. See Fed. R. Civ. P. 58.
 Eight months later, and periodically thereafter during
the next few years, the FDIC's counsel wrote to the district court
soliciting action in respect to its summary judgment motion. 
Although these letters were served upon Roffman's lawyer and
entered on the district court docket, Judge Wolf did not respond to
any of them until late 1997, when he set a motions hearing
(presumably encompassing both the FDIC's summary judgment motion
and Roffman's related motion to strike). At that hearing,
rescheduled and eventually held on April 28, 1998, the court
entered an order reinstating the third-party complaint. It
simultaneously denied Roffman's motion to strike, granted the
FDIC's motion for brevis disposition on count 3, and dismissed the
remainder of the third-party complaint without prejudice. On June
1, 1998, Roffman filed a notice of appeal.
 Later the same month, the FDIC moved to substitute
Revolution Portfolio LLC (RP) as the real party in interest,
averring that it previously had assigned its interest in certain of
the Bank's assets (including the Trust's indebtedness and Roffman's
guaranty) to RP. Roffman timely filed an opposition. He also
moved for relief from the April 28 judgment, see Fed. R. Civ. P.
60(b), asserting that the district court, at the time it entered
summary judgment, did not have the real party in interest before
it. The court granted the motion to substitute, see Fed. R. Civ.
P. 25(c), and denied the motion for relief from judgment. Roffman
did not file a second notice of appeal at that juncture.
II. DISCUSSION
 Roffman asseverates that the district court never should
have reopened the case in the first place; that, even if the court
appropriately reinstated the third party complaint, it erred in
entertaining the third-party complaint and granting summary
judgment on count 3; and that the court impermissibly permitted an
untimely substitution of parties. We consider these arguments
seriatim.

 A. Reinstatement.
 Roffman contends that reinstatement of the claim for the
outstanding balance three years after the court's issuance of a
"procedural order of dismissal" violated the temporal strictures of
Fed. R. Civ. P. 60(b)(1) (which authorizes a court to relieve a
party from a final order or judgment on grounds of, among other
things, "mistake, inadvertence, surprise, or excusable neglect" if
a motion is made within one year following the entry of the order
or judgment). Roffman arguably waived this point by not raising it
in the lower court after the court had notified him that it would
hear the FDIC's summary judgment motion. After all, the opposition
that he filed in anticipation of the hearing merely replicated
arguments previously made, and did not question revivification of
the action. We do not pursue the question of waiver, however,
because the argument against reinstatement is easily dispatched on
the merits.
 Roffman begins from the mistaken premise that the so-
called "procedural order of dismissal" entered by the district
court on September 30, 1994, constituted a final judgment, which
could be corrected only under Rule 60. In fact, the September 30
order did no more than bring about an administrative closing of the
case. Administrative closings comprise a familiar, albeit
essentially ad hoc, way in which courts remove cases from their
active files without making any final adjudication. See Corion
Corp. v. Chen, 964 F.2d 55, 56-57 (1st Cir. 1992) (holding that an
order deeming a case "administratively closed" was not a final,
appealable order absent a separate document to signal the court's
"view that the case had concluded"). The method is used in various
districts throughout the nation in order to shelve pending, but
dormant, cases. See, e.g., id.; In re Arbitration Between Phila.
Elec. Co. & Nuclear Elec. Ins. Ltd., 845 F. Supp. 1026, 1028
(S.D.N.Y. 1994); Mercer v. Allegheny Ludlum Corp., 132 F.R.D. 38,
38-39 (W.D. Pa. 1990), aff'd, 931 F.2d 50 (3d Cir. 1991). We
endorse the judicious use of administrative closings by district
courts in circumstances in which a case, though not dead, is likely
to remain moribund for an appreciable period of time.
 Properly understood, an administrative closing has no
effect other than to remove a case from the court's active docket
and permit the transfer of records associated with the case to an
appropriate storage repository. "In no event does such an order
bar a party from restoring the action to the Court's active
calendar upon an appropriate application." In re Arbitration, 845
F. Supp. at 1028. Nor is the power to resurrect reserved to the
parties. The court, too, retains the authority to reinstate a case
if it concludes that the administrative closing was improvident or
if the circumstances that sparked the closing abate. Consequently,
the September 30 order did not terminate the underlying case, but,
rather, placed it in inactive status until such time as the judge,
in his discretion or at the request of a party, chose either to
reactivate it or to dispose of it with finality.
 That ends this aspect of the matter. Judge Wolf opted
to reopen the case to permit litigation of the third-party
complaint after the FDIC's repeated correspondence brought the
matter to his attention and further study convinced him that he had
swept too broadly in closing the entire file. This decision falls
comfortably within the realm of the court's discretion, and the
time parameters specified in Rule 60(b) do not apply. Hence, we
uphold the district court's reinstatement order.
 B. Joinder.
 Resolution of the reinstatement question only begins the
work of disentangling the imbricated strands of Roffman's appeal. 
We next must answer the question whether the FDIC's deployment of
a third-party complaint against Roffman was proper. In this
regard, Roffman asserts that the district court should not have
entertained the impleader, and that, therefore, the joined claim on
the guaranty should fall of its own weight. We review a district
court's decision to permit the filing of a third-party complaint
under Fed. R. Civ. P. 14(a) for abuse of discretion. See 6 Charles
Alan Wright, et al., Federal Practice & Procedure 1443 (2d ed.
1990) (explaining that "whether a third-party defendant may be
impleaded under Rule 14 continues to be a question addressed to the
sound discretion of the trial court").
 As previously explained, the FDIC impleaded Roffman as a
third-party defendant on theories of indemnification and
contribution (counts 1 and 2, respectively), maintaining, in
essence, that if it were found to be liable to Lehman, then Roffman
would in turn be liable to hold it harmless or, at least,
contribute to any damages assessed against it. See Fed. R. Civ. P.
14(a) (contemplating the availability of third-party practice when
a non-party is or may be liable "for all or part of the plaintiff's
claim against" the defendant). In the same pleading, the FDIC
asserted an independent claim for the outstanding loan balance,
premised on Roffman's guaranty (count 3). RP (which now stands in
the FDIC's shoes) acknowledges that the FDIC could not have brought
count 3 as a stand-alone third-party claim under Rule 14(a), but
asserts that count 3 was validly joined with counts 1 and 2 under
Fed. R. Civ. P. 18(a) (providing for permissive joinder). To parry
this thrust, Roffman contends that the FDIC's claims for
indemnification and contribution were not viable under state law,
and thus, since the use of Rule 14(a) admittedly hinged on the
propriety of those claims, the FDIC should not have been allowed to
implead him at all.
 We doubt that Roffman has preserved this argument
inasmuch as he did not raise it below in his opposition to the
FDIC's summary judgment motion. See Teamsters, Chauffeurs,
Warehousemen & Helpers Union, Local No. 59 v. Superline Transp.
Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled
in this circuit, it is that, absent the most extraordinary
circumstances, legal theories not raised squarely in the lower
court cannot be broached for the first time on appeal."). We
prefer not to inquire into this apparent waiver, however, for we
conclude, without serious question, that the FDIC was entitled to
implead Roffman under Rule 14(a) and that it appropriately joined
the guaranty claim under Rule 18(a).
 A defendant, acting as a third-party plaintiff, may
implead any non-party "who is or may be liable to the third-party
plaintiff for all or part of the plaintiff's claim against the
third-party plaintiff." Fed. R. Civ. P. 14(a) (emphasis supplied). 
If the defendant acts within ten days of submitting his answer, he
may bring a third party into the suit without leave of court. 
Otherwise, the court's permission must be obtained. In that
event, the determination is left to the informed discretion of the
district court, which should allow impleader on any colorable claim
of derivative liability that will not unduly delay or otherwise
prejudice the ongoing proceedings. See Highlands Ins. Co. v. Lewis
Rail Serv. Co., 10 F.3d 1247, 1251 (7th Cir. 1993); United Statesv. One 1977 Mercedes Benz, 708 F.2d 444, 452 (9th Cir. 1983). 
Under this liberal standard, a party accused of passive negligence
(here, the FDIC) assuredly is entitled to implead the party who
allegedly committed the relevant active conduct (here, Roffman) on
a theory of indemnification. See Montaup Elec. Co. v. Ohio Brass
Corp., 561 F. Supp. 740, 748 (D.R.I. 1983) (stating that, under
Massachusetts law, tort-based indemnity arises if the indemnitee
"did not join in the [indemnitor's] negligent act but became liable
in consequence of it").
 The FDIC's third-party claim for contribution against
Roffman similarly passes muster because Roffman and the Bank (the
FDIC's predecessor in interest) were putative joint tortfeasors
(i.e., according to the complaint, Roffman's fraudulent acts
combined with the Bank's negligent omissions to create harm). SeeMass. Gen. Laws ch. 231B, 1(a) (1986) (providing a right of
contribution among persons who are jointly liable in tort for the
same injury); see also Wolfe v. Ford Motor Co., 386 Mass. 95, 100
(1982) (allowing contribution even though the two joint tortfeasors
were liable under different theories of tort liability).
 To be sure, Roffman argues that because Lehman's
complaint sought only restraint or rescission of the property
sales, and not damages, a third-party claim for contribution should
not lie. But this argument gains him no ground. Even though
Lehman's complaint did not explicitly seek money damages, that
omission did not eliminate the possibility that damages might be
awarded to him. See Fed. R. Civ. P. 54(c) (providing that "every
final judgment [except those by default] shall grant the relief to
which the party in whose favor it is rendered is entitled, even if
the party has not demanded such relief in the party's pleadings"). 
Rule 54(c) is particularly apt in this situation, for a party may
pray for rescission and be entitled to it, yet only receive
damages. See, e.g., Coggins v. New England Patriots Football Club,
Inc., 397 Mass. 525, 536 (1986) (observing that "because rescission
is an equitable remedy, the circumstances of a particular case may
not favor its employment," and limiting the plaintiff's remedy to
damages). As long as damages may be awarded in lieu of rescission,
impleader properly may be used to seek contribution toward those
potential damages. See, e.g., Prudential Ins. Co. v. BMC Indus.,
Inc., 113 F.R.D. 100, 102-03 (S.D.N.Y. 1986). It follows
inexorably that the district court did not err in denying Roffman's
motion to strike and allowing the FDIC's Rule 14(a) claims to
stand.
 Against this backdrop, the court properly assumed
jurisdiction over count 3 of the third-party complaint. Rule 18(a)
authorizes a third-party plaintiff to "join, either as independent
or as alternative claims, as many claims, legal, equitable, or
maritime, as the [third-party plaintiff] has against an opposing
party." This authorization is subject only to the usual
requirements of jurisdiction and venue (none of which are
implicated here) and the district court's discretionary power to
"direct an appropriate procedure for trying the claims." Schwab v.
Erie Lackawanna R.R. Co., 438 F.2d 62, 68-72 (3d Cir. 1971). Given
Rule 18(a)'s broad expanse, misjoinder of claims has become an
anachronism in federal civil practice. See 6A Wright, et al.,
supra, 1582 (suggesting that, under Rule 18(a), there no longer
"can be [a] misjoinder of claims"). 
 In this instance, Roffman signed an unconditional
personal guaranty of a loan, and the borrower later defaulted. As
a holder in due course of the note, the FDIC had an independent
claim for the outstanding balance against Roffman. There is
absolutely no reason why the FDIC could not append its independent
claim on the guaranty to its other claims against Roffman.
 As a fallback position, Roffman suggests that the third-
party complaint against him should have been dismissed because the
FDIC had a complete defense under 12 U.S.C. 1823(e) (1994) to the
claims brought by Lehman. We do not agree. Even if section
1823(e) offered the FDIC a potentially strong defense against
Lehman's claims, the record fails to show that the mere existence
of that statute rendered Lehman's complaint a nullity.
 There is, moreover, a broader point. A district court
must oversee third-party practice with the core purpose of Rule
14(a) in mind: avoiding unnecessary duplication and circuity of
action. See 6 Wright, et al., supra, 1443. Requiring a district
court to determine the merits of all defenses potentially available
to the original defendant as a precondition to allowing that
defendant to file a third-party complaint would frustrate this
purpose and countervail the efficient allocation of judicial
resources. Thus, as long as a third-party action falls within the
general contours limned by Rule 14(a), does not contravene
customary jurisdictional and venue requirements, and will not work
unfair prejudice, a district court should not preclude its
prosecution. So here.
 C. The Merits.
 To warrant summary judgment, a movant must show that a
controversy presents "no genuine issue as to any material fact and
that the moving party is entitled to a judgment as a matter of
law." Fed. R. Civ. P. 56(c). We review summary judgment orders de
novo, considering the record and all reasonable inferences to be
drawn therefrom in the light most favorable to the party opposing
summary judgment. See National Amusements, Inc. v. Town of Dedham,
43 F.3d 731, 735 (1st Cir. 1995).
 In this case, Roffman does not contest the key facts
(e.g., the default on the note, the validity of the guaranty, and
the amount of the unpaid balance on the defaulted loan, net of
foreclosure proceeds). Instead, he pegs his opposition to summary
judgment on whether the third-party complaint was properly before
the district court. Having rejected the arguments that he raises
in that vein, see supra Part II(B), we now must affirm the district
court's grant of summary judgment.
 D. Substitution of Parties.
 Finally, Roffman seeks to challenge the order
substituting RP for the FDIC. This challenge is not properly
before us. We explain briefly.
 Roffman filed his notice of appeal on June 1, 1998. In
terms, it purported to appeal from the district court's April 28
order nothing more. The motion to substitute postdated the
filing of the notice of appeal. The order allowing substitution
was entered on August 12, 1998. Roffman neither amended his
original notice of appeal to reflect his displeasure with the
substitution order nor filed a new notice of appeal addressed to
that order within the time allowed by law. See Fed. R. App. P.
4(a).
 It is black-letter law that a notice of appeal must
specify the order or judgment to which the appeal is addressed. 
See Fed. R. App. P. 3(c). Failure to make a sufficient
specification ordinarily debars the appellant from arguing the
propriety of an unspecified ruling on appeal. See Smith v. Barry,
502 U.S. 244, 248 (1992); United States v. Velez Carrero, 140 F.3d
327, 330 (1st Cir. 1998); Kotler v. American Tobacco Co., 981 F.2d
7, 10-11 (1st Cir. 1992). Roffman runs afoul of this tenet in
respect to the substitution order an order that eventuated after
he filed his notice of appeal. We are, therefore, without
jurisdiction to consider the issue.
III. CONCLUSION
 We need go no further. The district court committed no
error in administratively closing the case and then reinstating a
portion of it. By the same token, the court did not err either in
permitting the maintenance of the third-party complaint against
Roffman or in permitting the joinder of an independent claim
against him within the contours of that third-party complaint. To
close the circle, the court acted appropriately in granting summary
judgment to the FDIC on that independent claim.

Affirmed. Costs in favor of Revolution Portfolio LLC.