943 F.2d 225
 In the Matter of the Arbitration Between Ray CHUNG and Brien
Smith, as Representatives for the Unit Holders and
Incentive Unit Holders, Petitioners-Appellants,
and
PRESIDENT ENTERPRISES CORP., Respondent-Appellee.
 No. 1972, Docket 91-7533.
 United States Court of Appeals,
Second Circuit.
 Argued July 22, 1991.
Decided Aug. 28, 1991.
 
 Jonathan Zavin, New York City (Jeffrey L. Coploff and Lawrence S. Kamerman, Richards & O'Neil, of counsel), for petitioners-appellants.
 Dennis P. Orr, New York City (Lawrence J. Slattery and John M. Teitler, Shearman & Sterling, of counsel), for respondent-appellee.
 Before WINTER, ALTIMARI and MAHONEY, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Petitioners-appellants, representatives of the leveraged buyout group ("LBO Group") that sold Wyndham Foods, Inc. ("Wyndham") to respondent-appellee President-Enterprises Corporation ("PEC"), appeal from an order entered in the United States District Court for the Southern District of New York (David N. Edelstein, Judge ), dismissing their motion to stay arbitration and granting respondent-appellee's motion to compel arbitration. In 1990, PEC purchased Wyndham for $335 million. Approximately seven months after the sale of Wyndham was completed, PEC, claiming that the LBO Group had breached its warranties under the sale agreement, issued a demand for arbitration pursuant to the sale agreement's arbitration clause. In response, the LBO Group initiated the underlying action in the United States District Court for the Southern District of New York, seeking to stay the arbitration.
 
 
 2
 The LBO Group contended that the claims underlying PEC's demand for arbitration did not fall within the ambit of the arbitration clause contained in the agreement. Specifically, the LBO Group argued that six of PEC's eight claims were not based on the LBO Group's warranties, but were instead based on Wyndham's performance, which the LBO Group did not guarantee. The district court rejected this argument, dismissed the LBO Group's motion, and formulated an order compelling arbitration. On appeal, we consider whether the district court's order compelling arbitration is appealable and whether the six claims at issue are arbitrable.
 
 
 3
 For the reasons set forth below, we affirm the district court's order dismissing the LBO Group's motion to stay arbitration and granting PEC's motion to compel arbitration.
 
 BACKGROUND
 
 4
 Wyndham Foods, Inc. ("Wyndham") is a consortium of bakery companies whose principal place of business is Augusta, Georgia. PEC is a Taiwanese food conglomerate that manufactures and distributes food products and also acts as an agent for such United States corporations as Pepsi, Kraft and Anheuser Busch.
 
 
 5
 On May 25, 1990, PEC entered into an agreement to purchase Wyndham from the LBO Group which, in the late 1980s, had acquired the companies that comprised Wyndham. The sale agreement had two components--a merger agreement which delineated the terms of the transaction and an escrow agreement which basically provided for the maintenance of a $20 million fund which would be available as damages if the LBO Group breached the merger agreement. Under the escrow agreement, the parties also agreed that if a claim for indemnification or breach of a warranty in the merger agreement were to arise, the parties would arbitrate the dispute "in accordance with the commercial arbitration rules of the American Arbitration Association." Approximately two months after the parties entered into the agreement, the deal was consummated and PEC acquired Wyndham.
 
 
 6
 After conducting Wyndham's operations for approximately seven months, PEC served a demand for arbitration on a representative of the LBO Group, claiming that the LBO Group had breached a number of warranties contained in the merger agreement. PEC alleged that the LBO Group was aware that material adverse changes in Wyndham's business, financial condition, operations or prospects had occurred prior to the deal's closing, but had failed to inform PEC of these changes as required under the merger agreement. More precisely, PEC claimed that the LBO Group violated the agreement by failing to inform it that: (1) Wyndham had lost several major clients, resulting in a loss of $2,000,000 in profits; (2) Wyndham could not meet contractually obligated minimum sales levels of Frookies, a Wyndham product; (3) Wyndham had announced certain price increases that failed in the marketplace; (4) sales of Wyndham's "Country Hearth" products were below budget; (5) Wyndham's material costs were significantly above budget; (6) the planned expansion of Wyndham's direct store delivery route system had failed and consequently had cost the company between $500,000 and $1,000,000; (7) Wyndham would not be able to meet its projected annual sales revenues and operating earnings; and (8) Wyndham and its subsidiaries had departed from past practices by, among other things, increasing 1990 projections to make Wyndham more attractive to purchasers.
 
 
 7
 In response, the LBO Group filed a petition and a motion to stay arbitration in the United States District Court for the Southern District of New York. The LBO Group initially contended that four of the eight claims were budgetary matters that were not covered by the warranties in the merger agreement. It later argued that two other claims were also based on budgetary projections rather than warranties. Accordingly, the LBO Group asserted that these six claims were not arbitrable. We note that the LBO Group did not dispute the arbitrability of two of PEC's claims--Wyndham's loss of major clients and its failed expansion of the direct store delivery route system. Subsequently, PEC cross-moved to compel arbitration.
 
 
 8
 The district court dismissed the LBO Group's motion for a stay and granted PEC's motion to compel arbitration on all of PEC's claims. The LBO Group then made a motion for a stay of arbitration pending appeal, which the district court denied. Subsequently, we granted PEC's motion for a temporary stay and expedited this appeal.
 
 DISCUSSION
 I. Appealability
 
 9
 Initially, we consider whether the district court's order compelling arbitration is a final order reviewable by this Court. Section 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15 (1988),[1] delineates the circumstances in which a party may appeal a court's decision concerning arbitration. It provides in pertinent part:
 
 
 10
 (a) An appeal may be taken from--
 
 
 11
 (3) a final decision with respect to an arbitration that is subject to this title.
 
 
 12
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order(1) granting a stay of any action under section 3 of this title;
 
 
 13
 (2) directing arbitration to proceed under section 4 of this title;
 
 
 14
 (3) compelling arbitration under section 206 of this title; or
 
 
 15
 (4) refusing to enjoin an arbitration that is subject to this title.
 
 
 16
 9 U.S.C. § 16. According to the language of the section, if the district court's decision in this case may be characterized as "a final decision with respect to an arbitration," it is appealable. The LBO Group contends that since the district court's decision resolved the only matter before the court, i.e., whether arbitration was proper, it was such a final decision. We agree.
 
 
 17
 A petition to stay or to compel arbitration can arise in one of two ways: it may be "embedded" in pending litigation or it may be initiated by an independent proceeding. Although the FAA does not specifically distinguish between "embedded" and "independent" proceedings, it is clear that the posture in which the arbitrability question arises affects appealability.
 
 
 18
 Courts and commentators generally agree that if a district court's order directing arbitration arises in connection with a pending action, the order is interlocutory and thus is not appealable pursuant to § 16(b). See Communication Workers of America v. American Tel. & Tel. Co., 932 F.2d 199, 207 (3d Cir.1991); Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 867 F.2d 1518, 1520 (5th Cir.1989); Siegel, Appeals from Arbitrability Determinations Under the New § 15 of the U.S. Arbitration Act, 126 F.R.D. 589 (1989); see also McCowan v. Dean Witter Reynolds Inc., 889 F.2d 451, 452-53 (2d Cir.1989); Janneh v. GAF Corp., 887 F.2d 432, 436 n. 5 (2d Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Since a court retains jurisdiction over the parties to an embedded proceeding while they arbitrate a discrete portion of their dispute, it is logical to delay an appeal of a ruling compelling arbitration until the court subsequently confirms or rejects the arbitrator's decision. See generally Edith H. Jones, Appeals of Arbitration Orders--Coming Out of the Serbonian Bog, 31 S.TEX.L.REV. 361, 375-76 (1991).
 
 
 19
 In contrast, an arbitrability decision arising from an independent proceeding, such as the one forming the basis for this appeal, resolves the sole issue before the court. Consequently, once a court conducting an independent proceeding determines that a dispute is or is not arbitrable, the court generally does not retain jurisdiction over the parties. Because in such circumstances the district court's arbitrability decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," Van Cauwenberghe v. Biard, 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), it is a final decision.
 
 
 20
 It is uncontested that in enacting the FAA, Congress intended that an "[a]ppeal c[ould] be taken from final judgments, including ... a final judgment that refuses to enjoin arbitration." 134 Cong.Rec.S. 16,284, 16,309 (daily ed. Oct. 14, 1988) (statement of Senator Heflin in section-by-section analysis of the Judicial Improvements and Access to Justice Act of 1988, Pub.L. No. 100-702, 102 Stat. 4670-71, submitted in lieu of a Committee Report). Although some commentators have lamented that Congress has chosen this path despite the general policy favoring arbitration, see, e.g., Siegel, 126 F.R.D. at 591, the Judiciary Committee itself noted that allowing such orders to be appealed "preserve[s] the general policy that appeal should be available where there is nothing left to be done in the district court." 134 Cong.Rec.S. 16,284, 16,309. Accordingly, we conclude that an order regarding arbitrability that stems from an independent proceeding is a "final decision with respect to an arbitration" from which appeal may be taken under § 16(a)(3). Accord Apollo Computer, Inc. v. Berg, 886 F.2d 469, 471 (1st Cir.1989); Thomson McKinnon Sec., Inc. v. Salter, 873 F.2d 1397, 1398-1400 (11th Cir.1989) (per curiam); cf. N.V. Maatschappij Voor Industriele Waarden v. A.O. Smith Corp., 532 F.2d 874, 875 (2d Cir.1976) (per curiam) (arbitration order stemming from an independent proceeding is appealable.). Thus, the district court's order is appealable.
 
 II. Arbitrability
 
 21
 Proceeding to the merits, we consider whether the district court erred in concluding that PEC's claims were arbitrable. Under the escrow agreement, the parties agreed to refer to arbitration all claims made on the escrow fund. Specifically, the escrow agreement provided that PEC could assert a claim to the fund for, inter alia, the LBO Group's breach of general warranties contained in the merger agreement. Included among these warranties was a clause guaranteeing that no material changes had occurred in Wyndham's business from December 31, 1989 to the date of closing. Specifically, pursuant to Section 4.7 of the merger agreement, the LBO Group warranted:
 
 
 22
 Absence of Changes. Except as set forth in Schedule 4.7, since December 31, 1989 Wyndham and the Subsidiaries have conducted their businesses only in the ordinary course and, in a manner consistent with past practice and, since December 31, 1989, there has not been (i) any change in the business, operations (including without limitation, results of operations), properties ... condition (financial or otherwise), assets or liabilities (including without limitation, contingent liabilities) or prospects of Wyndham or any Subsidiary having individually or in the aggregate, a Material Adverse Effect....
 
 
 23
 Merger agreement § 4.7 (emphasis added). If such changes occurred, the LBO Group was required to inform PEC. Merger agreement § 6.7.
 
 
 24
 In its demand for arbitration, PEC claimed that the LBO Group breached its warranties by making material adverse changes affecting Wyndham's business, financial condition, operations and prospects, without informing PEC. More specifically, PEC contended that the LBO Group was required to inform PEC when it became aware that Wyndham would not meet its budget projections for the coming year, that it could not meet its contractual obligation for sales of Frookies, that various price increases had failed in the marketplace, that sales of some of Wyndham's products were below anticipated levels while Wyndham's costs were above budget, and that Wyndham had departed from past practices in preparing its budgets.
 
 
 25
 On appeal, as before the district court, the LBO Group challenges PEC's position, contending that PEC's demand for arbitration involved Wyndham's failure to meet projections regarding its future performance, rather than the LBO Group's failure to adhere to its warranties. Thus, the LBO Group argues that the six claims in question are not arbitrable. We disagree.
 
 
 26
 Initially we note that the LBO Group premised its petition to the district court for a stay of arbitration on New York law, see N.Y.Civ.Prac.L. & R. 7503(b) (McKinney 1990), while PEC premised its motion to compel arbitration on the FAA, see 9 U.S.C. § 4. Generally, the FAA governs all questions before a federal court regarding the validity and enforceability of arbitration agreements if: (1) the parties have entered into a written arbitration agreement; (2) there exists an independent basis for federal jurisdiction; and (3) the underlying transaction involves interstate commerce. See 9 U.S.C. § 2; see also Southland Corp. v. Keating, 465 U.S. 1, 11-12, 104 S.Ct. 852, 858-859, 79 L.Ed.2d 1 (1984); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir.1987). In this case, the parties agree that these criteria have been satisfied. Thus, federal arbitration law, rather than New York arbitration law, should be applied in reviewing the petition.
 
 
 27
 Review of a district court's decision finding a dispute to be arbitrable "is quite limited because, in determining whether a contract contains a clause requiring the parties to submit to arbitration, all doubts must be resolved in favor of arbitrability." Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union, 822 F.2d 302, 304 (2d Cir.1987); see Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1986). "Indeed, unless it can be said 'with positive assurance that the arbitration clause is not susceptible of a plausible interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration." Concourse Village, 822 F.2d at 304 (quoting United Steel Workers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).
 
 
 28
 The question thus arises whether each of the disputes underlying PEC's demand for arbitration fall within the warranty clauses, such that they are arbitrable. Of course, in deciding whether the parties have agreed to submit particular claims to arbitration, we do not rule on the merits of the underlying disputes themselves. See AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Instead, to determine arbitrability we need only consider whether there exists an interpretation of the parties' agreement that covers the disputes at issue. Here, the LBO Group's argument--that PEC's claims are based merely on Wyndham's failure to achieve projected revenues and figures which PEC understood were purely speculative--seems to be directed at the merits of the dispute rather than the issue of arbitrability. Because it is clear that each of PEC's claims may be understood to allege a breach of the LBO Group's warranty regarding changes in Wyndham's prospects, we find that these claims are arbitrable. While an arbitrator may subsequently agree with the LBO Group's interpretation of the agreement, it is apparent that under a broad reading of the arbitration clause, PEC's claims fall within its scope.
 
 CONCLUSION
 
 29
 Based on the foregoing, we affirm the district court's order granting respondent-appellee's motion to compel arbitration and dismissing petitioner-appellant's motion to stay arbitration and we vacate the stay of arbitration that we imposed pending appeal.
 
 
 
 [1]
 Section 16 was originally codified as 9 U.S.C. § 15 (1988). Because another § 15 dealing with a different issue already existed, the section we are considering was renumbered as 9 U.S.C. § 16. Accordingly, we have adjusted all references to the section to reflect this renumbering