**In re Arbitration Between PHILA-DELPHIA ELECTRIC COM-PANY, Plaintiff,**

**v.**

**NUCLEAR ELECTRIC INSURANCE LIMITED, Defendant.**

**No. 92 Civ. 3097 (JES).**

United States District Court,
S.D. New York.

March 4, 1994.

Harry P. Begier, Jr., Philadelphia, PA, Fried, Frank, Harris, Shriver & Jacobson, New York City (Robert E. Juceam, of counsel), for plaintiff.

Baker & McKenzie, New York City (Lawrence W. Newman, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Petitioner, Philadelphia Electric Company ("PECO"), moves to vacate an arbitration award issued on January 19, 1993 (the "Award") in favor of Respondent, Nuclear Electric Insurance Limited ("NEIL"), by an arbitration panel agreed upon by the parties. For the reasons that follow, PECO's motion to vacate is denied.

## BACKGROUND

This litigation arises out of a dispute between PECO, a utility that owns and operates nuclear power plants, and NEIL, a mutual insurance company owned by its member insureds, including PECO, over insurance coverage under extra expense insurance policies purchased by PECO from NEIL for three shut-downs of one of its nuclear power plants, Peach Bottom Atomic Power Station Unit 3 ("Unit 3"). The shut-downs were allegedly caused by intergranular stress corrosion cracking ("IGSCC") damage to its recirculation piping system ("the Unit 3 claim."). See Affidavit of Lawrence W. Newman, Esq. dated May 21, 1993 ("Newman Aff."), Ex. 2 (Sworn Statement in Support of Claim and Proof of Loss).

This litigation began on April 29, 1992, when PECO filed a complaint in this Court seeking a stay of its arbitration with NEIL and a declaratory judgment on the issue of the collateral estoppel effect of a prior arbitration award on the Unit 3 claim. See Complaint. On May 29, 1992, PECO filed a motion for a preliminary injunction and declaratory judgment. On July 2, 1992 this Court, ruling from the bench, denied PECO's motion and entered an appropriate Order stating, in part, "The Clerk of the Court is directed to close the above-captioned action." See Order dated July 6, 1992. On July 7, 1992, the Clerk marked the case closed on the docket record. See Newman Aff. Ex. 9.

The parties proceeded to arbitration and, on January 20, 1993, a panel of three arbitrators (the "Panel") unanimously ruled that PECO's Unit 3 claim against NEIL is barred

by the preclusive effect of a prior unanimous award dated March 27, 1991 in an arbitration brought by PECO against NEIL, Newman Aff., Ex. 3 (the "Prior Award"). In that arbitration, PECO had sought extra expense insurance coverage for damage resulting from two shutdowns at Peach Bottom Atomic Station Unit 2 ("Unit 2") and allegedly caused by the same phenomenon, IGSCC, in the same recirculation piping system under a policy issued to PECO by NEIL identical to that at issue in the Unit 3 claim. *See* Newman Aff. Ex. 4 (Sworn Statement of Insured in Support of Claim and Proof of Loss); *see also* Newman Aff., Ex. 1 ("Award") at 2, 4.

. PECO now moves for summary judgment in the above-captioned action and a vacatur of the Award on the ground that the Panel's decision was based on insufficient evidence, that the Panel clearly disregarded settled law on collateral estoppel and that the Panel exceeded its authority in arbitrating the issue of collateral estoppel.

## DISCUSSION

■ NEIL argues that, since the Court issued an order closing out the action in which PECO's present motion was filed, PECO was required to file a separate petition to vacate the award and that such relief would now be untimely. This argument, however, erroneously assumes that the Court's July 6, 1992 Order administratively closing the above-captioned action constituted a substantive dismissal of PECO's complaint. In fact, an administrative closing has no effect other than the removal of all case records to the Closed Records office and, in some instances, to warehouse storage outside of the courthouse. In no event does such an order bar a party from restoring the action to the Court's active calendar upon an appropriate application.

Moreover, NEIL's contention that PECO was required to file its motion to vacate as a separate action under a new docket number and to serve such a motion on NEIL within three months of the delivery of the Award is unsupported by the language of the Federal Arbitration Act, 9 U.S.C. § 12. Title IX, 9 U.S.C. § 12, requires only that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." NEIL admits that PECO effected timely service of its motion to vacate on NEIL's counsel and thus complied with the Federal Arbitration Act.

■ NEIL's citation of *Matter of Chung and President Enterprises*, 943 F.2d 225 (2d Cir.1991), is misplaced. In *Matter of Chung*, the Second Circuit held only that a party may appeal an order compelling arbitration in an "independent action," *i.e.*, where the plaintiff seeks only an order compelling or staying arbitration or a declaration that a dispute is or is not arbitrable, but not in an "embedded action," in which the Court's order compelling arbitration leaves other issues unresolved. *Id.* at 228. In such "independent actions," a Court is divested of jurisdiction, because the order compelling arbitration in such circumstances is a final judgment. *Id.* Since no judgment, final or otherwise, was entered in this case on July 6, 1992, or indeed at any other time, *Matter of Chung* has no relevance here.

■ However, while the Court has concluded that it has jurisdiction to resolve the merits of the motion to vacate, it is clear that that motion must be denied. A finding that the Panel manifestly disregarded the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 516 (2d Cir.1991) (citations omitted). *See Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir.1989); *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892 (2d Cir.1985). The alleged error "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator," and the governing law alleged to have been disregarded by the arbitrators must be "well defined, explicit, and clearly applicable." *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir.1989) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930,

933–34 (2d Cir.1986). Tested by that standard, PECO has plainly failed to carry its burden of demonstrating that the Panel deliberately disregarded clearly applicable law. *See Fried, Krupp, GmbH v. Solidarity Carriers, Inc.,* 674 F.Supp. 1022, 1026 (S.D.N.Y., *aff'd,* 838 F.2d 1202 (2d Cir.1987).

Indeed, *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383 (2d Cir.1989), relied on by PECO to demonstrate that its legal position was compelling, is in fact inapposite. The dispute in *Leddy* involved the preclusive effect of an unconfirmed arbitration award in a subsequent federal court proceeding, not in a subsequent arbitration. On the other hand, New York case law presented to the Panel by NEIL supported the Panel's proposition that unconfirmed arbitration awards can have collateral estoppel effect in subsequent arbitrations. *See, e.g., Protocom Devices, Inc. v. Figueroa,* 173 A.D.2d 177, 569 N.Y.S.2d 80, 81 (N.Y.Sup.Ct.1991); *County of Rockland v. Aetna Casualty and Surety Co.,* 129 A.D.2d 606, 514 N.Y.S.2d 102, 103 (N.Y.Sup.Ct.), *app. denied,* 70 N.Y.2d 603, 518 N.Y.S.2d 1026, 512 N.E.2d 552 (1987); *Hilowitz v. Hilowitz,* 85 A.D.2d 621, 444 N.Y.S.2d 948 (N.Y.Sup.Ct.1981). It follows that since PECO has not demonstrated that the law was clearly established in its favor and that the Panel " 'understood and correctly stated the law but proceeded to ignore it,' " *Fahnestock,* 935 F.2d at 516 (quoting *Siegel v. Titan Indus.,* 779 F.2d 891, 893 (2d Cir.1985)), the award may not be vacated on that ground.

█ Similarly, there is no merit to PECO's contention that the evidence was insufficient to support the conclusion that PECO's Unit 3 claim was barred by the collateral estoppel effect of the Prior Award. The record demonstrates that the Panel held two hearings devoted to the collateral estoppel issue, *see* Newman Aff., Exs. 25 and 19, and carefully considered PECO's Response to the Arbitrator's Questions of August 20, 1992, *see* Motion to Vacate, Ex. 3, which purports to identify non-identical issues before the prior arbitration's panel. The Panel specifically found, however, that despite PECO's assertions, the issues in the two arbitrations were identical. *See* Newman

Aff., Ex. 1 at 3. Moreover, at the conclusion of the final oral argument held on December 22, 1992, the Panel asked PECO's counsel if he wished to submit any further material on the collateral estoppel issue and PECO's counsel declined to do so on the record. Newman Aff., Ex. 19 at 353–54.

In sum, PECO has made no showing that the Panel's decision was bereft of any rational support or rendered in manifest disregard of clearly established law. Nor can that conclusion be based, as here, merely upon the fact that the Panel rejected PECO's arguments that the Prior Award could have been based on non-identical or unnecessary issues.

█ Finally, PECO has failed to satisfy its heavy burden of proving that the arbitrators exceeded their powers. The Second Circuit has held that "a court must accord the 'narrowest of readings' to the 'excess of powers' provisions of 9 U.S.C. § 10(d)." *Kerr–McGee Refining Corp. v. M.T. Triumph,* 924 F.2d 467, 471 (2d Cir.1991), *quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 703 (2d Cir.1978). Since federal arbitration policy requires courts to "construe arbitration clauses as broadly as possible," *David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 250 (2d Cir. 1991), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Moreover, the New York Court of Appeals has specifically held that "whether a prior award constitutes a bar to the relief sought [is] within the exclusive province of the arbitrator to resolve." *Board of Education of Patchoque–Medford Union Free School District v. Patchoque–Medford Congress of Teachers,* 48 N.Y.2d 812, 424 N.Y.S.2d 122, 123, 399 N.E.2d 1143, 1144 (1979); *see also Resnick v. Serlin,* 119 A.D.2d 825, 501 N.Y.S.2d 449, 450 (2d Dep't 1986); *Matter of Board of Education, Florida Union Free School District and Florida Teachers Ass'n,* 104 A.D.2d 411, 478 N.Y.S.2d

935 (2d Dep't 1984), *aff'd,* 64 N.Y.2d 822, 486 N.Y.S.2d 938, 476 N.E.2d 337 (1985).[1]

Nor can there be any dispute that PECO's insurance policy's broad arbitration clause, which provided, in pertinent part, that "[a]ny claim or controversy between the Member Insured(s) and the Insurer as to any matters arising out of or relating to this Policy ... shall be submitted to arbitration," *see* Newman Aff., Ex. 10 § IX.13(a), afforded the Panel the authority to decide a dispute as to the collateral estoppel affect of a previous arbitration award. Arbitrators given such broad contractual authority have the power to decide the arbitrability of issues where "the subject matter of the dispute," *e.g.,* the collateral estoppel issue before the Panel, bears a "reasonable relationship [to] the general subject matter of the underlying contract." *Nationwide General Insurance Co. v. Investors Insurance Co. of America,* 37 N.Y.2d 91, 371 N.Y.S.2d 463, 467, 332 N.E.2d 333 (1975). Here, the subject matter of the collateral estoppel dispute, *i.e.,* whether the Prior Award finding that NEIL was not liable to PECO for coverage of IGSCC damage to the recirculation piping system precluded relitigation of the same issue with respect to a different nuclear facility that was covered by an identical insurance policy, relates directly to the underlying contract of insurance. Therefore, PECO's claim that the Panel exceeded its authority in arbitrating this dispute is intenable.

### CONCLUSION

For the reasons given above, plaintiff's motions to vacate the arbitration award and for summary judgment are denied.[2]

It is **SO ORDERED.**

---

**1.** PECO's citation of *Rembrandt Industries, Inc. v. Hodges Int'l, Inc.,* 38 N.Y.2d 502, 381 N.Y.S.2d 451, 344 N.E.2d 383 (1976), decided before *Patchoque–Medford,* is therefore not controlling. In any event, the issue in *Rembrandt* was whether a state court could properly dismiss an action on the basis of *res judicata* where the record was ambiguous as to whether the arbitration award encompassed a ruling on a question raised in the subsequent court proceeding. The New York Court of Appeals held that when the losing party in an arbitration files a subsequent court action based on claims that arguably could have been raised in the arbitration, "[t]he scope of the award and, therefore, its *res judicata* effect, is an issue properly determinable by the court and not the arbitrators." *Id.* at 452.

However, the court in *Rembrandt* never addressed the issue of whether, if a losing party in an arbitration brings a subsequent arbitration, the subsequent arbitrators could properly determine the collateral estoppel effect of the prior arbitration. Moreover, the cases cited by PECO that relied on *Rembrandt* in holding that arbitra- tors do not have the power to decide the collateral estoppel effect of a prior arbitration award are clearly in conflict with the New York Court of Appeals's decision in *Patchoque–Medford* and were properly not followed by the Panel here.

**2.** It is not clear what this motion for summary judgment adds to plaintiff's application to vacate the arbitration award, especially since plaintiff's papers no where specify how the relief sought on this motion differs from the relief sought on the motion to vacate. Moreover, this motion is not supported by a 3(g) statement as required by Civil Rule 3(g) for the United States District Court of the Southern District of New York. To the extent that plaintiff's motion for summary judgment seeks a declaratory judgment on the issue of collateral estoppel, that motion is subsumed within the Court's denial of the motion to vacate. If plaintiff seeks summary judgment for some other relief to which he is entitled, however, plaintiff may file another motion for summary judgment upon an appropriate showing. For these reasons, the motion shall be and hereby is denied without prejudice.