**ERMENEGILDO ZEGNA CORPORATION and Lanificio Ermenegildo Zegna, S.p.A., Plaintiffs–Appellants,**

v.

**Lanificio Mario ZEGNA, S.p.A., Defendant–Appellee,**

**Sespi Sette Spighe, S.p.A. and Romeo Fashions, Defendants.**

**No. 1981, Docket 96–9717.**

United States Court of Appeals, Second Circuit.

Argued July 15, 1997.

Decided Jan. 6, 1998.

Jonathan M. Jacobson, New York City. (Alan Siegel, David M. Zensky, Drew H. Cohen, Erika K. Thomas, Akin, Gump, Strauss, Hauer & Feld, L.L.P., on brief), for Plaintiff–Appellant.

William R. Hansen, New York City. (Paul W. Garrity, Nims, Howes, Collison, Hensen & Lackert, on brief), for Defendant–Appellee.

Before: WINTER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JACOBS, Circuit Judge:

On and off since 1941, rival branches of the Zegna family have been disputing each other's use of the ZEGNA name in connection with the manufacture or marketing of high-end woolen fabrics and clothing. Ten years ago, the rival companies—Ermenegildo Zegna Corporation ("EZC") and Lanificio Mario Zegna, S.p.A. ("LMZ")—settled litigation pending in the United States District Court for the Southern District of New York by entering into an agreement, so ordered by the court, which (in relevant part) (i) specified in detail how and where LMZ may use the ZEGNA name, (ii) submitted disputes to arbitration, and (iii) barred the parties from contesting the agreement. The current dispute concerns an arbitration that LMZ has commenced in Milan, seeking to reform the settlement agreement along lines authorized by an intervening change in Italian law.

Plaintiff EZC brought on a motion in the original Southern District lawsuit, seeking (i) an order finding LMZ in contempt on the ground that the arbitration seeks reformation (or, effectively, rescission) of the agreement in contravention of the no-contest

clause, and (ii) summary enforcement of the agreement. LMZ moved (i) to compel EZC to submit to the arbitration, notwithstanding EZC's position that LMZ's initiation of the arbitration, and the relief sought therein, violated the no-contest clause; and (ii) for a stay of proceedings pending the outcome of the arbitration. The district court denied EZC's motion for contempt and for summary enforcement, and granted LMZ's motion to compel arbitration and to stay further proceedings in the district court pending a ruling by the arbitral panel.

EZC's appeal challenges each decision of the district court, and LMZ moves to dismiss for lack of appellate jurisdiction. We conclude that this appeal is premature. Lacking appellate jurisdiction, we dismiss without reaching the parties' substantive arguments.

### BACKGROUND

EZC, a United States corporation, is a retailer and wholesaler of men's fashions in the United States and Canada. Its parent corporation, plaintiff Lanificio Ermenegildo Zegna, S.p.A., is an Italian corporation that designs, manufactures, and sells fine fabric and high fashion clothing worldwide. LMZ, also an Italian corporation, is a weaver and seller of fine woolen fabrics. The Zegna family business began manufacturing woolen fabrics in Italy in 1915. By 1941, the family business had split into two separate companies. In 1949, the companies entered into an agreement governing the use of the ZEGNA name in Italy and abroad.

The 1949 agreement remained serviceable until EZC commenced an action in 1985 in the Southern District of New York, alleging that LMZ's use of the name "Mario Zegna" in the United States amounted to trademark infringement and unfair competition. In 1987, the parties entered into an agreement settling this litigation, which was so ordered by the district court on April 9, 1987 (the

"Agreement"). The Agreement undertook to resolve all disputes over the ZEGNA mark and specified very particularly how LMZ could use the name "Mario Zegna" in the future, including the location and size of the mark on LMZ's fabrics and the types of garments on which the mark may appear.

The 22–page Agreement includes two provisions that bear on the current appeal. Paragraph 12(a) provides:

> Should there be any dispute arising between the parties with respect to the interpretation of this Agreement and Stipulation or with respect to the rights, duties and obligations undertaken by the parties herein, or arising herefrom, ... [i]f such dispute arises in the Republic of Italy, it shall be submitted for arbitration in Milan, Italy under Section 806 et seq. of the Italian Code of Civil Proceedings.

The so-called "no contest" clause appears in paragraph 11(b):

> The parties agree that they will not contest the validity of this Agreement and Stipulation or seek to set it aside in any proceeding. If any portion or provision hereof, however, is found to be invalid, the balance of the Agreement (and in any case Paragraphs 2, 7 and 11 hereof) will continue to be in full force and effect as among the parties.[1]

Some years after the Agreement was signed and so ordered, Italy changed its law of trademarks to relax restrictions on coexisting trademarks on the same surnames. Citing this change of law, LMZ commenced an arbitration in Italy in July, 1996, alleging that equity justifies the reformation of the Agreement to expand LMZ's permissible use of the Mario Zegna name in Italy to the fuller extent permitted by the new law. In the arbitration, LMZ seeks to modify paragraphs five, seven, and nine of the Agreement.[2]

---

**1.** Paragraph 2 recognizes EZC's superior rights to the ZEGNA name and mark. Paragraph 7 defines minutely the extent to which LMZ may continue to use the ZEGNA mark. In addition to the no-contest clause set forth in full above, Paragraph 11 cancels the predecessor 1949 agreement, and provides that upon breach of the

Agreement, the aggrieved party's relief is limited to enforcement of the Agreement's terms.

**2.** Paragraph 5 provides that LMZ will not seek registration of the ZEGNA mark in any jurisdiction. Paragraph 9 bars LMZ from licensing or assigning its permitted uses of the ZEGNA mark to another entity, except that a successor to LMZ

EZC responded to the Petition for Arbitration by filing an order to show cause in the Southern District action that had previously been concluded in 1987, seeking (among other relief) an order of civil contempt against LMZ, and summary enforcement of the Agreement by means of a permanent injunction. EZC alleges that LMZ's commencement of the arbitration was a violation of the no-contest clause of the Agreement, because the arbitration seeks to set aside key restrictions on LMZ's use of the ZEGNA name. LMZ filed a cross-motion for an order staying proceedings in the district court and compelling EZC to submit to arbitration in Milan.

The district court considered, as a preliminary matter, whether it should decline to exercise its jurisdiction on comity grounds. The court's decision to exercise its jurisdiction is not challenged on appeal.

The district court recognized that the pro-arbitration stance of federal law requires the court to compel arbitration unless it can say "with positive assurance" that the dispute at issue falls outside the clause, went on to consider whether the arbitration clause was susceptible to an interpretation that would include the dispute underlying the Milan arbitration within its scope, and concluded that it was. The court then examined the no-contest clause, and ruled that it would bar a challenge to the Agreement in its entirety (or to all of its key provisions), but is no obstacle to an arbitration challenging particular provisions of the Agreement. The court decided that LMZ's claims in the Milan arbitration did not violate the no-contest clause because they did not amount to an attack on the Agreement in its entirety. The district court therefore denied EZC's motion for contempt and a preliminary injunction, and granted LMZ's motion to compel arbitration. The court also stayed its proceedings pending the arbitration.

EZC urges a number of grounds for reversal; but the threshold question is whether section 16 of the Federal Arbitration Act authorizes us to review the district court's decision. We conclude that it does not, so we do not reach the parties' arguments on the merits of this appeal.

## DISCUSSION

The Federal Arbitration Act ("FAA"), enacted originally in 1925 and codified as amended at 9 U.S.C. §§ 1–16, had as its purpose "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). To that end, its "provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Id.* at 25 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)). Section 16, which was added to the statute in 1988, *see* Pub.L. 100–702, tit. X, § 1019(a), 102 Stat. 4642, 4670–71 (1988), furthers the statute's aim of eliminating barriers to arbitration by "promot[ing] appeals from orders barring arbitration and limit[ing] appeals from orders directing arbitration." *Filanto, S.p.A. v. Chilewich Int'l Corp.,* 984 F.2d 58, 60 (2d Cir.1993); *see also Janneh v. GAF Corp.,* 887 F.2d 432, 436 n. 5 (2d Cir.1989) (holding that section 16 advances the federal interest in promoting arbitration because it "explicitly permits immediate appeals from orders giving litigation precedence over arbitration" while restricting immediate appeals from "[o]rders favoring arbitration."), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990).

Section 16 provides:

(a) An appeal may be taken from—

    (1) an order—

        (A) refusing a stay of any action under section 3 of this title,

        (B) denying a petition under section 4 of this title to order arbitration to proceed,

        (C) denying an application under section 206 of this title to compel arbitration,

(i.e., a company at least 40% owned by the owners of LMZ or their descendants) may use the mark to the extent permitted under the Agree-

ment. As discussed in the preceding footnote, Paragraph 7 delimits LMZ's ability to use the ZEGNA mark.

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing an arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16 (Supp.V.1994).

██ Notwithstanding its broad language, section 16(b) does not prohibit every appeal from an order directing arbitration. As the courts have construed section 16, the appealability of an order compelling arbitration turns on whether or not the arbitrability question is the whole subject of the lawsuit, that is, whether the arbitrability question is "independent" or "embedded." *Filanto,* 984 F.2d at 60. A suit is independent if the plaintiff "seeks an order compelling or prohibiting arbitration, or a declaration that a dispute is arbitrable or not arbitrable, and no party seeks any other relief." *Id.; see also* 9 U.S.C. § 16(a)(3). A final judgment ending such litigation is of course immediately appealable. *Id.; see also Matter of Chung and Smith, President Enters. Corp.,* 943 F.2d 225, 227–29 (2d Cir.1991); *Stedor Enters., Ltd. v. Armtex, Inc.,* 947 F.2d 727, 731 (4th Cir.1991). In addition, an immediate appeal in such a proceeding may be taken from an interlocutory order that channels the parties to arbitration; the party opposing arbitration need not await the outcome of the arbitration process. *Filanto,* 984 F.2d at 60.

██ By contrast, an embedded proceeding is one in which a party seeks some relief other than or in addition to an order requiring or prohibiting arbitration. Such additional relief typically concerns the merits of the underlying, allegedly arbitrable dispute. *Id.* Orders denying arbitration in an embedded case remain immediately appealable. 9 U.S.C. § 16(a)(1)(A)-(C), (a)(2); *see Haviland v. Goldman, Sachs & Co.,* 947 F.2d 601, 604 (2d Cir.1991) (permitting appeal of anti-arbitration order in an embedded case), *cert. denied,* 504 U.S. 930, 112 S.Ct. 1995, 118 L.Ed.2d 591 (1992); *Com–Tech Assocs. v. Computer Assocs. Int'l,* 938 F.2d 1574, 1576 (2d Cir.1991) (same). In the context of such a case, however, orders directing arbitration are not appealable absent certification by the district court pursuant to 28 U.S.C. § 1292(b). *See Filanto,* 984 F.2d at 60 & n. 2; *McDermott Int'l, Inc. v. Underwriters at Lloyds Subscribing to Memorandum of Insurance No. 104207,* 981 F.2d 744, 746–48 (5th Cir.) (dismissing appeal of pro-arbitration order in an embedded case), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); *Perera v. Siegel Trading Co.,* 951 F.2d 780, 784–86 (7th Cir.1992) (same). This barrier to appeal cannot be overcome by the collateral order doctrine. *See Steele v. L.F. Rothschild & Co.,* 864 F.2d 1, 3 (2d Cir.1988).

Thus, in an embedded proceeding, the party that has unsuccessfully opposed arbitration must await the conclusion of the arbitration before airing its arguments in opposition to arbitration before an appellate court. "In effect, the pro-arbitration tilt of the statute requires that, with respect to embedded actions, the party opposing arbitration must bear the initial consequence of an erroneous district court decision requiring arbitration." *Filanto,* 984 F.2d at 61.

██ Because the district court in the present case directed the parties to arbitration, the appealability of that order depends on whether the case in which it arose is an embedded or an independent proceeding. On this question the parties divide. Upon examination of the issues presented, the relief sought, and possible questions remaining for adjudication by the district court after the arbitrators have rendered a decision, we conclude that the action is embedded.

## A. The Issues Presented.

EZC argues that the proceeding in this case was "undeniably independent." Reply Brief for Plaintiffs–Appellants at 3. EZC's assertion is based on its view that the only issue that the district court addressed was the arbitrability of the dispute. Where the only question at issue concerns the arbitrability of the dispute, the case is independent. *See North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 163–64 (2d Cir.1995), *cert. denied*, 516 U.S. 1184, 116 S.Ct. 1289, 134 L.Ed.2d 233 (1996); *see also Chung*, 943 F.2d at 228. The record demonstrates, however, that the issues in the case, considered as a whole, and the analysis undertaken by the District Court went well beyond the question of arbitrability.

EZC's order to show cause alleges a violation of the Agreement's no-contest clause, and nowhere references arbitration or arbitrability:

that on April 9, 1987, this Court "So Ordered" that certain "Agreement and Stipulation and Order" (the "Order"), between and among plaintiff Ermenegildo Zegna Corporation ("EZ Corp."), Lanificio Ermenigildo[sic] Zegna S.p.A. ("LEZ") and defendant Lanificio Mario Zegna S.p.A. and . . .

that the Order contains a provision prohibiting any party from contesting the Order or otherwise seeking to set it aside "in any proceeding", and . . .

that LMZ has in fact commenced a proceeding against EZ Corp. and LEZ in Italy seeking to "eliminate from the text of the [Order]" no fewer than seven specific provisions thereof (the "Action"), and . . .

that the Action constitutes a clear and willful violation of this Court's Order.

On the basis of this alleged breach of the Agreement, EZC's order to show cause goes on to request the following relief:

1. Finding LMZ to be in contempt of this Court pursuant to its inherent contempt powers, 18 U.S.C. § 401(c) and Local Civil Rule 43;

2. Directing LMZ to discontinue the Action with prejudice and pay a fine of $10,-000 per day, or such other amount as this Court shall determine, until the Action is discontinued;

3. Awarding EZ Corp. and LEZ the costs and reasonable attorneys fees incurred in connection with this proceeding and in connection with the Action, in an amount to be shown at the Hearing;

4. Granting a permanent injunction enforcing the terms of the Order and barring LMZ and its officers, agents, servants, employees, and attorneys and all persons in active concert or participation with it from prosecuting the Action, or, in the alternative, a preliminary injunction pursuant to Fed. R. Civ. Proc. 65. . . .

The claim is not that LMZ's commencement of arbitration exceeded the scope of the arbitration clause (or a duty of good faith in respect thereto), but that it violated the prohibition of the no-contest clause; and EZC's order to show cause seeks something more and other than the thwarting of the arbitration in Milan. The district court is therefore called upon to construe and enforce contract obligations other than the parties' obligation to arbitrate.

■ The pure question of arbitrability was raised in this case by LMZ's cross-motion for an order compelling arbitration. However, when the defendant introduces the arbitration question into a pending action, the case is typically considered embedded. *See, e.g., Maye v. Smith Barney, Inc.*, 903 F.Supp. 570, 573 (S.D.N.Y.1995) (finding that an action was embedded where defendant successfully moved for arbitration of the claims); *see also Filanto*, 984 F.2d at 61 (holding that action "present[ed] a classic example of an embedded proceeding" where defendant moved to stay proceedings pending arbitration); *American Casualty Co. of Reading, Pennsylvania v. L–J, Inc.*, 35 F.3d 133, 136 (4th Cir.1994) (holding that when the arbitrability issue "is raised as an incident to a pending action," the action is embedded) (internal quotations and citations omitted); *Gammaro v. Thorp Consumer Discount Co.*, 15 F.3d 93, 94–95 (8th Cir.1994) (finding action to be embedded where district court ordered parties to arbitration on the defendants' motion). The character of an embedded proceeding is not altered by entry of an

order referring a breach of contract claim to arbitration, even when the order directs arbitration of all of the parties' claims and leaves nothing further for the district court to determine until the issuance of the arbitral award. *See Filanto,* 984 F.2d at 61; *see also Humphrey v. Prudential Sec. Inc.,* 4 F.3d 313, 318 (4th Cir.1993) (holding that an order compelling arbitration in an embedded proceeding is a non-appealable interlocutory order even when it resolves "all of the claims in which the arbitration issue is embedded"); *Perera v. Siegel Trading Co.,* 951 F.2d 780, 784 (7th Cir.1992) (same).

According to EZC, the silence of its order to show cause on the subject of arbitrability is irrelevant, because "LMZ's continued breach of the 'No–Contest clause,' " and "the specific proceeding in Italy" that EZC seeks to enjoin, are "one and the same." Reply Brief for Plaintiffs–Appellants, at 4. This argument conflates the concept of a "proceeding" with the concept of an "arbitration." The no-contest clause is not a gloss on the arbitration clause; it bars the parties from seeking to set aside the Agreement "in any proceeding," *i.e.,* in arbitration or elsewhere. The question for the court presented by EZC's order to show cause is whether LMZ breached the Agreement by contesting its validity, not the fairly distinct question of whether LMZ did so in arbitration as opposed to another forum. The question presented thus entails more than the typical independent action, which is fully resolved by a ruling on the appropriateness of an arbitral forum. *See Chung,* 943 F.2d at 228 (holding that an independent proceeding is one in which the order to arbitrate "resolves the sole issue before the court").

The structure and content of the district court's opinion reinforce the conclusion that this is an embedded proceeding, because the court did in fact address more than the arbitrability of the dispute. In the course of declining to defer to the Milan arbitration on grounds of comity, the district court characterized this action as one "involv[ing] the interpretation and enforcement of an order entered by this Court." 1996 WL 721079, at *4. In its consideration of the merits, the district court considered the arbitration clause and the no-contest clause separately. After concluding that the dispute was arbitrable in accordance with the terms of the arbitration clause, the court noted that it "must still determine whether the no-contest clause operates to exclude this type of dispute from arbitration." *Id.* at *7. Thus, in addition to determining whether the parties' dispute was open to arbitration, the district court addressed the separate question of whether it was susceptible to adjudication in any forum in light of the no-contest clause.

**B. The Relief Sought.**

We have previously classified actions as independent only where a party seeks to prohibit or compel arbitration, and no party seeks any other relief. *See North River,* 63 F.3d at 163–64. Here, however, EZC sought several remedies in addition to the injunction that would have the effect of halting arbitration, including an order of civil contempt and a fine of $10,000 per day (not to mention attorney's fees and costs). EZC's quest for relief beyond an injunction against further arbitration confirms that the proceeding is embedded. *See Filanto,* 984 F.2d at 60.

**C. The Remaining Proceedings.**

We have considered whether a party has presented additional issues beyond arbitrability and whether the relief sought exceeds an injunction against further arbitration. A closely related question is whether the district court's arbitrability decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Chung,* 943 F.2d at 228 (quoting *Van Cauwenberghe v. Biard,* 486 U.S. 517, 521, 108 S.Ct. 1945, 1949, 100 L.Ed.2d 517 (1988)). EZC cites the principle that "the issue of appealability ... turns not on whether an order for arbitration is sought but whether one is granted and, if so, whether a lawsuit remains in the district court after the arbitration has been ordered." *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1102 (2d Cir.1987). We agree, but we think that much may remain for the district court to do following the arbitration.

EZC's order to show cause is an episode in a complicated, multi-faceted lawsuit that

originated in 1985. If the arbitration award affects significant aspects of the Agreement, issues in that litigation may be revisited. Although we have not decided categorically whether a district court's retention of jurisdiction is alone sufficient to defeat appealability, *compare Filanto,* 984 F.2d at 61 ("Because the District Court declined to dismiss the complaint, . . . its order compelling arbitration is not appealable under 9 U.S.C. § 16(b)(3).") (internal citations omitted) *with North River,* 63 F.3d at 164 (finding a proceeding to be independent "even though the district court refrained from entering a judgment on the July 1991 order [directing arbitration] and retained jurisdiction to deal with any post-award proceedings"), the court's retention of jurisdiction in this case is more than a mere formality: the court may face a multiplicity of potential substantive issues beyond whether to confirm or vacate the arbitral award following the arbitrators' disposition of the dispute. For example, the availability of the attorney's fees sought by EZC will remain for disposition by the district court. EZC elected to litigate the issues in an already-existing action because it wished to invoke the court's contempt powers to summarily enforce the Agreement; it must now abide the consequences of that strategic choice.

All of the factors that this Court has previously identified as relevant to appealability of an order allowing or compelling arbitration— the issues presented, the relief sought, and the tasks remaining for the district court once the arbitral award is made—demonstrate that the order compelling arbitration in this case arose in the context of an embedded proceeding. In such a case, the arbitration order resembles "hundreds of case-management orders in a large piece of litigation, any of which may affect the outcome and almost none of which is appealable." *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 784 F.2d 831, 833 (7th Cir.1986); *see also Chung,* 943 F.2d at 228 ("Since a court retains jurisdiction over the parties to an embedded proceeding while they arbitrate a discrete portion of their dispute, it is logical to delay an appeal of a ruling compelling arbitration until the court subsequently confirms or rejects the arbitrator's decision.").

EZC's challenge to the arbitrators' authority to decide this dispute must await the outcome of the Milan arbitration. We intimate no position on that question, or any other issue bearing on the merits.

## CONCLUSION

The district court's order arose in the context of an embedded proceeding, and considerations of judicial economy as well as the plain terms of the FAA therefore preclude our review of that decision at this stage of the litigation. In the absence of appellate jurisdiction, we dismiss the appeal.