BANCOL Y CIA. S. EN C.,
et al., Plaintiffs,

v.

BANCOLOMBIA S.A., et
al., Defendants.

No. 99 Civ. 2216(JSR).

United States District Court,
S.D. New York.

Aug. 11, 1999.

Order Vacating Judgment and Issuing
Stay Sept. 28, 1999.

Dale A. Schreiber and Elise A. Vablorski, New York City, for plaintiff.

Joseph E. Neuhans, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On March 24, 1999, plaintiffs Bancol Y Cia S. En C. ("Bancol") and certain successors in interest commenced this suit against defendants BanColombia S.A. and several of its officers and directors, alleging securities fraud in violation of sections 10(b), 18(a), and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78r(a), and 78t(a), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder, and also seeking contractual recission. Defendants promptly moved to dismiss on the ground, *inter alia*, that there was a binding agreement between Bancol and BanColombia to submit such disputes to arbitration in Colombia. On June 28, 1999, the Court telephonically advised the parties that defendants' motion would be granted. This Memorandum Order will formally confirm that ruling and briefly set forth the reasons therefor.

The Complaint alleges that, by agreement dated August 24, 1997 (the "Contract"), a predecessor of BanColombia known as Banco Industrial Colombiano ("BIC") contracted to purchase Bancol's controlling interest in Banco de Colombia ("BC"), then Colombia's third largest bank, and to merge BIC and BC into a single entity, BanColombia. In exchange for its interest in BC, Bancol was to receive approximately $100 million in cash and approximately $245 million in certain securities that would eventually take the form of American Depositary Receipts ("ADRs") of BanColombia, registered with the Securities and Exchange Commission and traded on the New York Stock Ex-

change. *See* Complaint, ¶¶ 2, 28, 29. Plaintiffs assert that defendants engaged in a fraudulent scheme to inflate the value of these securities, the real value of which, they allege, was no more than $174 million. *See id.* at ¶¶ 3, 78.

"Clause Seventeenth" of the Contract (Declaration of Jay L. Pomerantz, Exhibit C) states:

> With respect to any disputes that might arise between the contracting parties in connection with the making, validity, interpretation, execution and termination of the within Contract, and which cannot be directly resolved by the parties themselves and for which there are no executory measures, then the dispute or disputes shall be submitted to an arbitration board composed of three (3) arbitrators; this board shall sit in Santafe de Bogota, D.C., and shall rule consonant with law . . . .

Clause 15.7, entitled "Applicable Law," states:

> This Contract shall be governed, interpreted and executed in accordance with the laws of the Republic of Colombia, save what relates to those operations which may be conducted abroad, which shall be governed by the laws of the respective nation where those operations are being carried out.

■ Based on Clause Seventeenth, defendants move to compel arbitration. Despite the seeming breadth of this clause, however, plaintiffs argue that it is properly interpreted so as not to apply to the instant controversy. But this threshold issue of arbitrability as a matter of contractual interpretation is here remitted to the arbitration panel to decide, for the parties have agreed, as part of Clause Seventeenth, to submit to arbitration, "any disputes . . . in connection with . . . the interpretation" of the Contract. Thus, while other threshold objections to arbitrability might be left to the Court, an objection that is essentially premised on the interpretation of an Contract itself has, by the Contract's own terms, been clearly and unmistakably reserved for the arbitrators. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983); *First Montauk Securities Corp. v. Menter*, 26 F.Supp.2d 688, 689 (S.D.N.Y.1998).[1]

■ Plaintiffs raise a separate objection to the arbitration of their claims under United States securities law, premised on their experts' initial assertion that, notwithstanding the Contract's choice-of-law provision, *ante*, Colombian courts, and therefore arbitrators, "have no authority to apply foreign substantive law," Joint Declaration of Dr. Fernando Londono Hoyos and Dr. Adolfo Salamanca Correa, dated May 19, 1999 ("Londono Decl."), ¶¶ 9, 10.[2] On this premise, plaintiffs argue that the arbitrability of their securities law claims is prohibited by the so-called "anti-waiver" provision of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.")

Nowhere, however, do plaintiffs or their experts cite a Colombian code provision or

---

1. By contrast, the extra-contractual question of whether the individual defendants (BanColombia's officers and directors) can invoke the protection of the Contract's arbitration clause is for the Court to decide. While United States law is clear "that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement," *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.1993), Colombian law appears less certain; but, on balance, the Court is persuaded that Colombian law reaches the same result. *See* the authorities annexed to the Declaration of Marco Gerardo Monroy Cabra, dated June 2, 1999 ("Monroy Reply Decl."), ¶ 17, Ex. 14.

2. The parties do not dispute that arbitrators in Colombia wield the same powers as Colombian courts.

applicable precedent reasonably supporting their underlying assertion that Colombian courts have no authority to apply foreign substantive law. By contrast, defendants' expert has referred the Court to specific Colombian code provisions that permit and, indeed, presuppose the application of foreign substantive law, *see* Monroy Reply Decl., ¶¶ 4–6, n. 1. Indeed, when confronted with these references, plaintiffs' expert retreated and, now conceding that Colombian courts can sometimes apply foreign law, contended that this was limited to specific circumstances expressly provided for by statute. *See* Supplemental Declaration of Dr. Fernando Londono Hoyos, dated June 18, 1999 ("Londono Suppl. Decl."), ¶¶ 6–11. Even this more limited assertion is, however, unsupported by meaningful citation and, in these circumstances, is entitled to little weight or credence.

Moreover, even assuming, *arguendo*, that the Colombian arbitration panel could not apply United States law, enforcement of the arbitration clause would still not offend the anti-waiver provision because plaintiffs have not shown the remedies under Colombian law to be inadequate. *See Roby* 996 F.2d at 1365–66. While plaintiffs' experts argue that "[i]t is uncertain that plaintiffs would be able to pursue a civil fraud claim," Londono Decl. ¶ 37, they once again fail to provide meaningful particularized support for this conclusory assertion. By contrast, defendants have referred the Court to Articles 1515 and 2341 of the Colombian Civil Code, which, upon inspection, provide basic rights-of-action for fraud and "extra-contractual liability" under which the aggrieved party can recover earnings or profits that were lost because of the fraudulent act. *See* Marco Gerardo Monroy Cabra, dated June 2, 1999 ("Monroy Decl.") ¶¶ 14, 16, *see also* Monroy Reply Decl. ¶ 20, Ex. 20.

The Court has also considered the various other arguments raised by plaintiffs and finds them without merit. Accordingly, defendants' motion to compel arbitration is hereby granted and the Complaint dismissed. Clerk to enter judgment.

SO ORDERED.

### *MEMORANDUM ORDER*

On August 11, 1999, the Court entered an Order compelling arbitration and directing entry of a Judgment dismissing the Complaint. *See Bancol v. Bancolombia*, 61 F.Supp.2d 1 (S.D.N.Y. 1999). Shortly thereafter, defendants timely moved under Fed.R.Civ.P. 59(e) and 60(b) to amend the Court's Order, vacate the Judgment, and enter a stay, instead of a dismissal, of the Complaint. Upon review of the moving and answering papers, the motion is granted.

It is clear that in the prior motion practice, the parties and Court overlooked the ramifications of the possibility that, if the Court left the determination of arbitrability to the arbitrators, the arbitrators might decline to arbitrate all or some portion of the underlying dispute and thus effectively require its return to this Court. Given this possibility, the Court's ruling on August 11 that aspects of arbitrability are in this case for the arbitrators to determine virtually mandates that the Court not dismiss the case, but rather stay it, as expressly authorized by statute. *See* 9 U.S.C. § 3; *see also Filanto, S.p.A. v. Chilewich Intern. Corp.*, 984 F.2d 58, 61 (2d Cir.1993); *see generally Ermenegildo Zegna Corp. v. Zegna*, 133 F.3d 177, 182–83 (2d Cir.1998).

Accordingly, the Clerk is directed to vacate the Final Judgment previously entered in this case and, in its stead, to place the case on the Court's suspense calendar pending resolution of all relevant arbitration proceedings.

SO ORDERED.